Jeffrey DAVIS *v*. STATE of Arkansas

CR 97-251                                        956 S.W.2d 163

Supreme Court of Arkansas
Opinion delivered November 13, 1997

502

*Robert E. Irwin* and *John R. Irwin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

W.H."Dub" Arnold, Chief Justice. The appellant, Jeffrey Davis, was sentenced to concurrent life sentences for three counts of rape and ten years' imprisonment for first-degree sexual abuse, for which he was also fined $10,000.00. He raises seven issues on appeal, none of which has merit. We affirm.

The State alleged that the appellant thrice raped his seven-year-old daughter by engaging in oral sex with her, by penetrating her vagina with his penis, and by penetrating her vagina with a foreign object. It was also alleged that appellant engaged in sexual contact with his daughter. A fifth charge, endangering the welfare of a minor, was dismissed at trial.

During the appellant's jury trial, the victim testified that, on several occasions, her father "took his private part and stuck it in

my private part," but "it wouldn't fit in all the way." When the appellant was "through," "white stuff would come out" on the victim's leg that she described as "gooey." According to the victim, the appellant also "made me put his private part in my mouth and suck on it." He touched her "private" with his tongue and stuck the tip of a lotion bottle and a vibrator into her "private part." The victim further described how she would rub on the appellant's "private." It was the victim's testimony that the appellant kept ladies' slips and "all kinds of stuff" under his bed. He would tie the slips in a knot to keep them from falling down because they were too big for the victim. The appellant would also make the victim look at dirty magazines and watch pornographic movies. According to the victim, these acts occurred in her parents' bedroom while her mother was gone. On cross-examination, the victim admitted to recanting the allegations to her foster parent, Ms. Ward, because, according to her, "it wasn't her business," and she "wouldn't leave me alone."

In addition to the victim's testimony, the State also offered the testimony of Tammy Coney, a family service worker for the Arkansas Department of Human Services, who testified that it was not unusual for child sexual-abuse victims to recant their allegations. The victim's elementary school counselor, Melissa Cox, related that the victim had emotional problems at school. Nurse Paula McAlister and Dr. George Richison saw the victim at St. Mary's Hospital on January 5, 1996. While Dr. Richison testified that the victim's exam was normal, he also stated that the victim's account would be consistent with her hymenal ring being intact. Officer Bryce Davenport testified that suggestive pictures and pornographic magazines and movies were found at the appellant's residence. According to the officer, a bag containing white lace material and a small night shirt was located under the appellant's bed.

The appellant testified in his own defense and denied the charges. His wife and the victim's mother, Tracy Davis, testified on her husband's behalf that the victim "always acted like a grown up" and had emotional problems with adjusting to a new school that caused her to make the allegations. At the close of all the evidence, the jury found the appellant guilty as charged.

### 1. Sufficiency of the evidence

At the close of the State's case in chief, the appellant moved for a directed verdict as follows:

> Your Honor, at the end of the State's testimony the defendant, Jeff Davis, moves for a directed verdict on all the remaining counts of the information.

After the trial court denied this motion, appellant presented his case to the jury. At the close of all the evidence, the appellant made the following motion:

> At the conclusion of all the evidence, the defense evidence and the State's evidence, the defendant renews his motion for directed verdict on the ground that there is insufficient evidence to make a prima facie case.

The trial court again denied the motion. On appeal, the appellant complains that the only evidence to support the State's charges of rape against him was the testimony of the child-victim, who had earlier recanted her allegations.

A directed-verdict motion is a challenge to the sufficiency of the evidence and requires the movant to apprise the trial court of the specific basis on which the motion is made. *Stewart v. State*, 320 Ark. 75, 894 S.W.2d 930 (1995). Arguments not raised at trial will not be addressed for the first time on appeal, and parties are bound on appeal by the scope and nature of the objections and arguments they presented at trial. *Id.* In the present case, the appellant's directed-verdict motion was not specific. Under these circumstances, we will not address the merits of appellant's argument. In any event, even if we were to address the merits of his argument, it would fail. We have held many times that the uncorroborated testimony of a rape victim is sufficient to support a conviction. *Rains v. State*, 329 Ark. 607, 953 S.W.2d 48 (1997).

### 2. Prosecutorial misconduct

In his opening statement to the jury, the prosecutor remarked that the case involved "a man who delights and takes pleasure in the sexual perversion of children." When appellant

objected to this statement and requested that the trial court admonish the jury, the trial court agreed and issued the admonishment. Later, during the appellant's case-in-chief, he testified as follows:

> I can't stop being her father, not for her — not only for her but for me; and if everything goes, I'm not quitting. I feel like I've got a problem that needs to be solved; and if permitted, I want to fix it. Whatever it is; and I'll say it again, the first I . . .

During his initial cross-examination of the appellant, the prosecutor stated, then asked, "You've got a problem that needs to be fixed. How long have you been a pervert?" Before the appellant could respond, his attorney objected to the question. The trial court sustained the objection and agreed to the appellant's request to admonish the jury. The appellant made a motion for mistrial, which the trial court denied. After the jury returned a guilty verdict, the appellant renewed his motion for mistrial and asked the trial court to set aside the verdict on the ground that the prosecutor's comment during opening statement, when taken together with his improper question asked during cross-examination, amounted to prosecutorial misconduct. The trial court again denied the motion.

■ A mistrial is a drastic remedy that is granted only where the error is so prejudicial that justice cannot be served by continuing the trial or where the fundamental fairness of the trial itself has been manifestly affected. *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997). The trial court is afforded broad discretion in making its ruling, and a mistrial will not be declared when the prejudice can be removed by an admonition to the jury. *Id.*

■ It is obvious to us that the prosecutor's object in the present case was to label the appellant as a "pervert." While we may not approve of this trial tactic, we cannot say that the prosecutor's conduct was so drastic as to warrant a mistrial. *See Sullinger v. State*, 310 Ark. 690, 840 S.W.2d 797 (1992); *Burkhart v. State*, 301 Ark. 543, 785 S.W.2d 460 (1990). When viewing the strong admonitions the trial court issued at the time the prosecutor's remarks were made, we hold that any potential prejudice was

cured and that the trial court did not abuse its wide discretion in denying the motion for mistrial.

### 3. Testimony of Tammy Coney

Next, the appellant contends that the trial court erred in allowing Tammy Coney, a family service worker for the Arkansas Department of Human Services, to offer expert testimony that it was not unusual for child sexual abuse victims to recant their allegations.

■■ We recently summarized the law regarding the qualifications of an expert witness in *Smith v. State*, 330 Ark. 50, 55-56, 953 S.W.2d 870 (1997):

> Whether a witness qualifies as an expert in a particular field is a matter within the trial court's discretion, and we will not reverse such a decision absent an abuse of that discretion. *Mace v. State*, 328 Ark. 536, 944 S.W.2d 830 (1997). If some reasonable basis exists demonstrating that the witness has knowledge of the subject beyond that of ordinary knowledge, the evidence is admissible as expert testimony. *Id.* The general test of admissibility of expert testimony is whether it will assist the trier of fact in understanding the evidence presented or determining a fact in issue. A.R.E. Rule 702; *Matthews v. State*, 327 Ark. 70, 938 S.W.2d 545 (1997); *Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995). In addition, expert testimony must be relevant and not misleading or confusing to the jury. *Stewart v. State*, 316 Ark. 153, 870 S.W.2d 752 (1994). In determining the relevance of the testimony, the proponent must show that the evidence is reliable and sufficiently related to the facts of the case to aid the trier of fact in resolving the dispute. *Prater v. State*, 307 Ark. 180, 820 S.W.2d 429 (1991).

In the case at bar, Ms. Coney testified that she had been involved in investigating child-abuse cases for six and one-half years and had received eight weeks of new-worker training that covered different aspects of abuse, neglect, and family dynamics. Three years prior to trial, Ms. Coney had received one hundred-fifty hours of additional training. In view of Ms. Coney's training and experience, we cannot say that the trial court abused its discretion in qualifying Ms. Coney as an expert and allowing her testimony, as it is appar-

ent that she had knowledge of child-abuse cases beyond that of an ordinary person. *See Poyner v. State,* 288 Ark. 402, 705 S.W.2d 882 (1986).

■ The appellant also complains that the trial court should not have permitted Ms. Coney's testimony because "there was no strong record before the court which indicated that a child abuse case was before the court and that there was no need for the testimony of Tammy Coney to be made at that time." This specific objection was not made at trial and is thus not preserved for our review. *See Stewart v. State, supra.*

## 4. Juror Lindsey — Motion for mistrial

After the jury returned a guilty verdict on three counts of rape and one count of sexual abuse, it recessed for the evening. The next morning, the bailiff approached the trial court with information that juror Jonathan Lindsey was having a "problem" with the guilty verdict.

When questioned outside the presence of the other jurors, juror Lindsey advised the trial court that he had never been a juror before and that he felt that he should have "stood up and stayed strong . . . instead of giving in to everybody else (on the jury)." He related that he became troubled during his drive home from the courthouse and "had just this real bad feeling in me that I had made a bad decision." The colloquy between the trial court and juror Lindsey continued as follows:

> TRIAL COURT: Now, yesterday when the jury returned to the courtroom and I asked you if you had reached your verdict and then I read off your verdicts, then I asked if this was the jury's verdicts.
>
> JUROR: And, I agreed with everybody, yes, sir.
>
> TRIAL COURT: And, at that time did you have some reservations that you needed to advise the court of?
>
> JUROR: Not really because we had just walked out of the jury room and I'm not saying that they intimidated me. I'm not saying that I felt intimidated by the other jurors or anything; and I'm not saying that the decision I made was because of their decision, really; but I mean it's just that I didn't feel like I should lay down

a guilty verdict; but after sitting there talking to them and, you know, they were all telling me all the reasons why I should say he was guilty and all the reasons why they felt he was guilty, and it was just more than —

TRIAL COURT: At the time you heard all that how did you feel?

JUROR: At the time they were telling all that I thought, "Well, okay, then he's guilty of all this stuff"; and, you know, "If ya'll feel this way and this is why y'all feel this way, then I should feel this way, too"; but then after I left the courtroom, it was a totally different feeling so far as I was concerned and I didn't feel that way at all.

The attorneys were permitted to question juror Lindsey as follows:

ATTORNEY FOR APPELLANT: Your Honor, I think before we go any further that we ought to ask him this question. Did you have an abiding conviction — were you satisfied beyond a reasonable doubt that Jeff Davis was guilty?

JUROR: No.

ATTORNEY FOR APPELLANT: You did not have an abiding conviction of his guilt?

JUROR: No.

PROSECUTOR: Did you tell the court you did when he asked you?

JUROR: Yes, I did.

PROSECUTOR: I believe earlier you made the statement that at first you had doubts and then the other eleven jurors said to you to look at this and look at this and look at this, and then you —

JUROR: And, after looking at that I was in agreement; but later when I left I was thinking, "I don't like what I just did," and doubt started to creep in.

PROSECUTOR: On your way home?

JUROR: That's correct.

PROSECUTOR: But, after deliberating with the other eleven jurors and after the other eleven suggested to you that you look at "A," "B," "C," and "D," you began thinking that based upon

their life's experiences and what they've been through and what they are saying, "I can see that"?

JUROR: Right.

ATTORNEY FOR APPELLANT: At that point were you convinced beyond a reasonable doubt of the guilt of Jeff Davis?

JUROR: Beyond a reasonable doubt?

PROSECUTOR: At that point.

ATTORNEY FOR APPELLANT: At that point did you have an abiding conviction in the truth of the charge?

JUROR: Yes, I did at that point.

ATTORNEY FOR APPELLANT: All right.

After the questioning of juror Lindsey concluded, the appellant moved for a mistrial on the ground that the verdict was not the result of an impartial consideration and that the reason given by the juror as to how he reached his verdict was unfair in nature.

█ █ Before addressing the precise issue before us, we must emphasize that A.R.E. Rule 606(b) only permits inquiry into whether any external influence or information could have played a part in the jury's verdict. The purpose of this rule is to balance the freedom of secret jury deliberations with the ability to correct an irregularity in those deliberations. *Borden v. St. Louis Southwestern Ry. Co.*, 287 Ark. 316, 698 S.W.2d 795 (1985). While the appellant did not object to the testimony regarding juror Lindsey's mind and emotions, it is apparent when reviewing the excerpted colloquy above that the inquiry at times delved into the improper area of juror Lindsey's mind and emotions. However, for purposes of our reviewing the appellant's argument on appeal, it is clear from juror Lindsey's testimony that no other juror "intimidated" him and that no extraneous prejudicial information influenced his decision.

█ Arkansas Code Annotated section 16-89-130(3) (1987) provides that the trial court may grant a new trial when a verdict rendered against the defendant has been decided by "lot" or chance. We have held that a verdict reached by the jury through a compromise of their views is not a verdict by lot but is a fair expression of their views. *Blaylack v. State*, 236 Ark. 924, 370

S.W.2d 615 (1963). The reasoning of the Eighth Circuit Court of Appeals is particularly helpful on this point:

> Persuasion and compromise are the processes by which juries are intended to reach their decisions. Otherwise, jurors would be polled directly after the close of trial — not allowed to discuss the case among themselves to arrive at a verdict acceptable to them all.

*Smith v. Lockhart*, 946 F.2d 1392, 1395 (8th Cir. 1991).

When making its ruling on this issue, the trial court observed that juror Lindsey had stated that, at the time the verdict was returned, he had an abiding conviction of the truth of the charge. When considering all the circumstances, the trial court did not abuse its discretion in denying the motion for mistrial.

### 5. Juror Lindsey — new jury

The appellant also argues, with respect to juror Lindsey, that the trial court should have dismissed the jury and impaneled a new jury for sentencing. He did not obtain a ruling on this request and thus has not preserved this argument for appeal. *Foreman v. State*, 328 Ark. 583, 945 S.W.2d 926 (1997).

### 6. Witness Steve Brown

Next, the appellant asserts that the trial court erred in permitting Steve Brown, Coordinator of the Fifth Judicial District Drug Task Force, to offer opinion testimony during the sentencing phase that a substance he identified as Super Manitol, a Vitamin B supplement commonly used to increase the yield of methamphetamine and cocaine, along with what he believed to be methamphetamine, were found in appellant's home. Particularly, appellant disputes Brown's qualifications to offer this testimony.

We initially observe that appellant has offered no case law to support his argument. We do not consider arguments that are unsupported by authority or convincing argument. *Hicks v. State*, 327 S.W.2d 652, 941 S.W.2d 387 (1997). In any event, Officer Brown had five years with the task force and as coordinator, was responsible for initiating major crime and narcotics inves-

tigations, and coordinated these investigations with state, local, and federal agencies. In view of his experience, the trial court did not abuse its discretion in permitting the officer to testify as to what he believed to be methamphetamine, for it is apparent that he had knowledge in this area beyond that of an ordinary person. *See Poyner v. State, supra.*

### 7.  Other crimes evidence

██ ██ Finally, the appellant maintains that the trial court erred in allowing Officer Brown's testimony during the sentencing phase about the appellant's pending drug charges. At trial, the appellant argued that, if the State were permitted to offer this evidence, he would be "required to offer some response or evidence . . . or even testify in order to refute those allegations." He further claimed that this evidence would be "highly prejudicial." While the trial court overruled the appellant's objection and permitted the State to present this evidence, the appellant did not testify during the penalty phase. On appeal, he asserts in a conclusory manner that this evidence was not independently relevant and that its probative value was substantially outweighed by the danger of unfair prejudice. He does not state, however, *how* he was prejudiced by the admission of this evidence. We will not reverse the trial court's ruling on evidentiary matters absent a demonstration of prejudice. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702, *cert. denied*, 117 S.Ct. 246 (1996). In view of the graphic testimony offered by the appellant's seven-year-old daughter describing how he repeatedly raped her, we cannot say that the appellant was prejudiced by the admission of the testimony at issue.

### 8.  Ark. Sup. Ct. R. 4-3(h)

We have reviewed the record in accordance with Ark. Sup. Ct. R. 4-3(h) for adverse rulings objected to by the appellant but not argued on appeal. We have found no such errors that would mandate reversal.

Affirmed.