Ellis Charles BUTLER *v.* STATE of Arkansas

CR 01–487                                      82 S.W.3d 152

Supreme Court of Arkansas
Opinion delivered June 13, 2002

*David O. Bowden*; and *Hicks Law Firm*, by: *Rickey H. Hicks*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. This second appeal follows an earlier appeal from seven convictions Ellis Butler sustained for rape and violations of a minor in the first-degree. We reversed

and remanded Butler's convictions, holding the trial court abused its discretion in denying a continuance when a last-minute change in counsel prejudiced Butler's preparation for trial, because his counsel was not provided full discovery of the names of the victims who were allegedly sexually violated. *See Butler v. State*, 339 Ark. 429, 5 S.W.3d 466 (1999).

On remand, Butler requested that the various charges be severed because all of the charges involving one victim, B.J.M. were for rape, and the two other charges involved counts of violating two other girls, A.W. and K.H., who were minors. The State agreed to sever the counts "by victim," so the rape charges involving B.J.M. would be tried separately. Butler went to trial on three rape charges involving B.J.M., and was convicted on all three counts. He was sentenced to thirty-two years on each count, to run consecutively, totaling 96 years' imprisonment. Butler brings this appeal, arguing four points for reversal.

■■ Butler first contends that the evidence was insufficient to sustain the rape charges. His argument is meritless. We have repeatedly held that, when a defendant challenges the sufficiency of the evidence convicting, the evidence is viewed in the light most favorable to the State, *Dixon v. State*, 310 Ark. 460, 839 S.W.2d 173 (1992), and only evidence supporting the verdict will be considered. *McGehee v. State*, 328 Ark. 404, 943 S.W.2d 585 (1997). This court has also held that the uncorroborated testimony of a rape victim is substantial evidence to support a rape conviction if the testimony satisfies the statutory elements. *Williams v. State*, 331 Ark. 263, 962 S.W.2d 329 (1998). Here, Butler was charged with rape under Ark. Code Ann. § 5-14-103(a)(4) (Repl. 1997), which provides that one commits rape if he engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. "Sexual intercourse" means "penetration, however slight, of the labia majora by a penis," and "deviate sexual activity" means "any act of sexual gratification involving . . . [t]he penetration, however slight, of the labia majora or anus of one person by any body member or foreign instrument manipulated by another person." § 5-14-101(1)(B).

Butler was the "general overseer of Maturing Word Minis-tries, Universal Church of God." In February of 1997, Sergeant Bob Roten of the Sex Crimes Division of the Arkansas State Police became aware of allegations of sexual abuse in Shirley, Arkansas, involving Butler. Roten and another officer traveled to Shirley, where they spoke to Butler. They found that two girls, A.W. and K.H., who were students at Butler's school, had made allegations to school officials. After conducting this investigation, Roten learned that another girl, B.J.M., who was now living in Sylvester, Georgia, had previously made a statement, that con-tained allegations against Butler. B.J.M.'s statement matched the information Roten had received from A.W. and K.H.

■■ B.J.M., who was nineteen and married at the time of the trial, was only nine or ten at the time of the first incident involving Butler. She testified that she met Butler in 1990 in Syl-vester, Georgia, where she was introduced to him by her parents. Shortly after meeting Butler, her family moved to Shirley to help him start a ministry. Butler established the Universal Church of God in 1991, and also established the Universal Christian Acad-emy, a ministry associated with the church. One day during the "cold months" of the 1991-92 school year,[1] B.J.M. was alone in Butler's office with him when he grabbed her around the waist, laid her on the floor, and started kissing her. He then digitally penetrated her. She asked him what he was doing, and he said that he was "just playing" with her. Afterwards, he took the girl home and told her that she could not tell anyone what had hap-pened.

B.J.M. and her family moved back to Georgia in August of 1993, but she saw Butler again when she returned to Arkansas in December of 1993, and stayed with Butler for a week. During that time, as they were leaving his office one night, he digitally penetrated her again. On another occasion, as they were driving home together, Butler pulled his car over on a dirt road that was

---

[1] Although B.J.M. testified that the first rape occurred during the 1990-91 school year, later evidence showed that the school had not been established in 1990 or 1991. At the conclusion of the evidence, the State moved to amend the information to conform to the proof, and the trial court granted the motion.

close to his house; he put B.J.M. on the hood of his Mustang and had sexual intercourse with her. Afterwards, she returned to Georgia and never came back to Arkansas.

B.J.M.'s testimony constituted sufficient evidence to support the three rape convictions. She was born on March 10, 1981, and, therefore, was under the age of fourteen at the time of the events during the 1991-92 school year and again in December of 1993. She testified that Butler digitally penetrated her on two different occasions, and had sexual intercourse with her once. Although Butler contradicted her testimony, the jury was free to believe all or part of the victim's testimony and disbelieve Butler's assertions. *See Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000).

Butler's second point suggests the trial court erred in failing to grant his mistrial motion when a juror, Keith Latimore, revealed for the first time during jury deliberations that he knew something about Butler's earlier trial. Latimore did not raise his hand when defense counsel asked jurors on voir dire if they had heard anything about the case. During deliberation, the jury sent a note to the trial judge that one of the jurors (Latimore) raised the question of Butler's prior trial and that Latimore was concerned abut Butler's having served three years in jail. The jury wanted to know the implications of Latimore's concern. The trial judge had Latimore come into his chambers, where the following exchange occurred:

COURT:     Are you Mr. Latimore?

LATIMORE:     Yes, sir.

COURT:     I guess you're aware of the question that was raised?

LATIMORE:     Yes, sir.

COURT:     Are you the one that raised the question?

LATIMORE:     Yes, sir.

COURT:     Mr. Latimore, did — do you recall going through voir dire and the question being asked if any of you know anything about this case?

LATIMORE:     Yes, sir.

COURT:      Do you recall your answer?

LATIMORE:   Yes, sir.

COURT:      And what was your answer?

LATIMORE:   That I didn't. I thought it was prior than what was presented from the media. I didn't know anything outside of what I saw or read in the paper. I thought everybody that was here knew — knew about what had happened.

COURT:      So you didn't think that it applied to any information at all, just what had happened since he had been arrested this time?

LATIMORE:   No, sir.

COURT:      Well, what kind of information did you disclose to the other jurors?

LATIMORE:   We were discussing — I mean, by then everybody had already made up their minds and they asked me how did I feel. I told them, you know — I told them I believe that . . .

COURT:      Well, I don't know want to know what your vote was, Mr. Latimore.

LATIMORE:   Okay. Okay.

COURT:      I just want to know what you told them.

LATIMORE:   I told them that I — that he had already served three years and apparently something wasn't right the first time or we wouldn't be back here a second time. So before we put a man up for life or whatever, I don't know what we're going to do, but we need to think real close this time and get it right and don't make the same mistakes that they made the first time.

COURT:      All right. You can go back.

Butler moved for a mistrial, stating that an instruction by the trial court to the jury could not cure the prejudice caused by Latimore's actions, and that the jury was "weighing more than just

the evidence . . . presented in the case." The trial judge took Butler's motion under advisement, and after the jury recessed overnight, the judge ruled the next day as follows:

> In looking back on that, of course, the sole issue of whether I declare a mistrial is whether the prejudice occurred. And if that prejudice is so powerful that it can't be corrected by some admonition or something else, the supreme court and the court of appeals are real clear that a mistrial is something that is to be avoided if possible as an extreme remedy. My reading of what he said is that everybody had their mind(s) made up already and it was kind of like Regis Philbin saying, "Is that your final answer." And they — I think, you know — you just have to speculate, really, to know what was going on, but they were inquiring of him, because he was the only African American on the panel, how did he feel about it. And that's my opinion. I think at that point, he was advising the jurors they needed to use extra caution and that — in my opinion, that really inured to the benefit of the defendant.
>
> Now, they've asked a question, so at that point, I've asked a question. I'm going to find that if there is prejudice it's merely speculative and based on what he said, I don't find that there is any prejudice.

After the trial court's ruling, the court cautioned the jurors to read again the instructions given them before and at the close of trial. It further told the jurors that it was their duty to determine the facts from the evidence produced at trial and to apply the law contained in the jury instructions to the facts when rendering its verdict. When none of the jurors indicated they could not follow the court's instructions, the jury returned to its deliberations. Sometime afterwards, Latimore told the bailiff that he wanted to speak to the judge, and the judge, by note, asked Latimore, "What do you want to talk about?" Latimore's response, by note, said:

> Judge Reynolds:
>
> Everyone feels I am holding up the process. I am following your instructions. I believe the prosecution only presented to me a case that shows an unusual relationship between a man and a child. I don't believe it was sexual.
>
> [Signed] K.L.

Butler renewed his motion for mistrial, which the trial judge denied, and the judge told the jury to continue its deliberation. Subsequently, the jury returned a guilty verdict on all three rape charges, and when polled, the jury confirmed its verdict was unanimous.

Butler initially analogized the present case to the one in *Walton v. State*, 279 Ark. 193, 650 S.W.2d 231 (1983), where this court reversed and remanded Walton's conviction on the basis of juror misconduct, but there, the juror deliberately withheld the fact that she had observed the first day of Walton's first trial, and *intentionally* misled the court with answers during voir dire, indicating she had no personal knowledge of the facts of the case. Here, there was no evidence of intentional misconduct on Latimore's part. Instead, Latimore's remarks indicated he misunderstood the nature and extent of defense counsel's questions as to whether the jurors knew anything about the case.

■ Following allegations of juror misconduct, the moving party bears the burden of proving that a reasonable possibility of prejudice resulted from any such juror misconduct. *State v. Cherry*, 341 Ark. 924, 20 S.W.3d 354 (2000). This court will not presume prejudice in such situations. *Id.* (citing *Larimore v. State*, 309 Ark. 414, 833 S.W.2d 358 (1992)). Jurors are presumed unbiased and qualified to serve, and the burden is on the appellant to show otherwise. *McIntosh v. State*, 340 Ark. 34, 8 S.W.3d 506 (2000); *Esmeyer v. State*, 325 Ark. 491, 930 S.W.2d 302 (1996). Whether prejudice occurred is also a matter for the sound discretion of the trial court. *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001).

Butler relies on *United States v. Resko*, 3 F.3d 684 (3d Cir. 1993), wherein that court of appeals held that the federal district court erred in not conducting a more comprehensive inquiry into allegations of juror misconduct. In that case, it came to the district court's attention that the jurors had been discussing the case prior to its being submitted for deliberations. Defense counsel asked the court to conduct individualized voir dire of the jurors to ascertain what had occurred and the extent of any prejudice caused by the alleged premature deliberations; in the alternative, a motion for

mistrial was made. The district court denied both motions, and instead gave the jurors a questionnaire that asked 1) if the jurors had participated in discussing the facts of the case with other jurors, and 2) if the answer to the first question was "yes," whether or not those discussions had caused the juror to form an opinion about the defendant's guilt. Each juror answered yes to the first question, but no to the second. *Resko*, 3 F.3d at 688.

In *Resko*, the defendants argued that the manner in which the district court handled and ruled on the matter was an abuse of discretion, and that the court should have engaged in further investigation into whether or not the jurors were prejudiced by their premature deliberations. The Third Circuit agreed, holding that, because the district court refused to engage in any investigation beyond the cursory questionnaire, there was no evidence in the record one way or the other regarding prejudice to the defendants. The Third Circuit Court of Appeals "simply [had] no way to know the nature of the jurors' discussions and whether these discussions in fact resulted in prejudice to the defendants." *Id.* at 690. By failing to conduct further inquiry, "the district court allowed the jurors, in effect, to be the judge of whether or not they had been influenced by their premature discussions. In this way, the district court effectively ceded to the jury its responsibility for determining whether or not the defendants would be prejudiced by the jurors' misconduct." *Id.* at 691.

By way of contrast, the Tenth Circuit Court of Appeals affirmed the lower court's decision not to hold a hearing on the question of jury misconduct in *United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998). There, an alternate juror reported to the court clerk that the jurors had been conversing about who might be the alternates, and one juror said, "I hope I'm not the hold-out juror." In response, another juror said, "It wouldn't be very hard. I think we all know what the verdict should be." After the federal district judge found out about this incident, he admonished the jury about the importance of not discussing the case and avoiding any media mention of the case until after the evidence had been presented. *McVeigh*, 153 F.3d at 1185-86. Once the jury had been dismissed for the day, the district court informed counsel of what had happened; defense counsel moved that the juror who

said "I think we all know what the verdict should be" be stricken from the jury. The government said that it was satisfied with the court's curative instruction. The district court decided not to hold a hearing on the allegation, and effectively denied the defense's motion to strike the juror. *Id.* at 1186.

On appeal, McVeigh argued that the district court abused its discretion in not holding a hearing on the juror's allegations. That court of appeals conceded that it was a close question, but concluded that the trial judge's decision was not an abuse of discretion. Particularly, the Tenth Circuit noted the following:

> Unlike cases concerning extraneous influences [on jurors], this case involves an allegation of intrajury misconduct, specifically the allegation that a juror had reached a premature conclusion regarding McVeigh's guilt. Although premature discussions among jurors may prejudice the defendant, *see Resko*, 3 F.3d at 689-90, intrajury misconduct generally has been regarded as less serious than extraneous influences on the jury. Consequently, an allegation of intrajury misconduct may or may not warrant a hearing.

> Courts face a delicate and complex task whenever they undertake to investigate reports of juror misconduct or bias during the course of a trial. In determining whether the allegation is sufficiently serious to warrant a hearing, the district court must consider the content of the allegations, including the seriousness and likelihood of the alleged bias, and the credibility of the source. Ultimately, the court must weigh the benefits of having a hearing, including the ability perhaps to ascertain more fully the extent and gravity of the possible prejudice, against the risks inherent in interrupting the trial and possibly placing undue emphasis on the challenged conduct.

*Id.* at 1186–87 (internal quotations and citations omitted).

The Tenth Circuit concluded that the district court had not abused its discretion in the *McVeigh* case for several reasons. The court noted the trial judge's strong curative instructions and the fact that any further actions might have drawn undeserved attention to the remark. Further, the Tenth Circuit Court of Appeals pointed out that the trial court, from its own observations, was under the impression that the juror who had made the remark

generally followed the court's instructions, and the fact that there were no other reports of misconduct led to the conclusion that the trial court's admonishments were effective. *Id.* at 1187–88. Thus, there was no abuse of discretion in refusing to hold a further hearing on the question of juror misconduct. *See also Farm Bureau Mut. Ins. Co. v. Foote,* 341 Ark. 105, 14 S.W.3d 512 (2000) (no error in refusing to inquire further into alleged jury misconduct when there was no affirmative proof that the jurors had been discussing the case, and when such an inquiry might have only served to place undue emphasis on the challenged conduct).

■ In the present case, the alleged misconduct occurred during deliberations, not during the trial itself. Upon inquiry by the trial court, juror Latimore said that everyone else had already made up their minds, and had asked him what he thought. The trial court carefully weighed the situation, considering Latimore's statement that everybody had their minds made up, before deciding no prejudice had occurred. In fact, in considering Latimore's statement, the trial judge reasonably found that Latimore's interaction with the jurors "really inured to Butler's benefit." Furthermore, the trial court also admonished the entire jury panel to follow its instructions with respect to the consideration of evidence; Latimore's second note to the court indicated that he was following the court's instructions. Finally, the polling of the jury revealed that the verdict was unanimous. Therefore, it does not appear that the trial court here abused its discretion in denying Butler's motion for a mistrial.

■ Butler also argues that the trial court abused its discretion in declining to question the jurors individually, as the Third Circuit held the trial court should have done in *Resko.* However, Ark. R. Evid. 606 precludes inquiry into "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon [the juror's] or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict[.]" A juror "may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Ark. R. Evid. 606(b). *See also Davis v. State,* 330 Ark. 501, 956 S.W.2d 163 (1997) (the purpose

of the rule is to balance the freedom of secret jury deliberations with the ability to correct an irregularity in those deliberations).

■ ■ The "extraneous" information in the instant case was juror Latimore's personal knowledge that Butler had previously been convicted and that the conviction was apparently reversed. While Rule 606 provides that jurors may testify about the introduction of extraneous information in an inquiry into the validity of a verdict, *see Witherspoon v. State*, 322 Ark. 376, 909 S.W.2d 314 (1995), the rule does not require a hearing on the question of juror misconduct. As in *McVeigh*, there was no error in the trial court's decision not to hold a hearing where the judge "already knew much of the information that a hearing would have provided, including who made the statement, what was said, and the general circumstances surrounding the statement." *McVeigh*, 153 F.3d at 1187 (comparing *Resko*, *supra*, for its holding that the trial court abused its discretion in not holding a hearing when it did *not* know this kind of information). Here, the trial court knew that juror Latimore had made the statement, and knew what the statement was and its context, based on the court's colloquy with Latimore. Further, the court admonished the jury about what it was to consider during deliberations, and was further reassured by Latimore's note that he was following the court's instructions. Therefore, it cannot be said that the trial court abused its discretion in refusing to grant Butler's motion for a mistrial.

In his third point for reversal, Butler argues the trial court erred in denying his motion to introduce evidence under the rape-shield statute, Ark. Code Ann. § 16-42-101(b) (Repl. 1999), which provides as follows:

> In any criminal prosecution under § 5-14-101 *et seq.* or § 5-26-202, or for criminal attempt to commit, criminal solicitation to commit, or criminal conspiracy to commit an offense defined in any of those sections, opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, *evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true,* or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim

denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose. (Emphasis added.)

The trial court conducted a rape-shield hearing to determine the admissibility of Butler's proffered testimony that was related to B.J.M.'s prior sexual conduct. B.J.M. testified that she told Butler's daughter that B.J.M.'s stepfather had sexually abused her, and she further said that she never recanted her statement concerning her stepfather. Butler, however, testified that, during his visit with B.J.M., B.J.M. recanted the allegation.[2] The trial court rejected Butler's proffer, finding Butler's testimony regarding B.J.M.'s having sexual contact with other persons was covered and should be excluded under the rape-shield statute.

■■ In evaluating the admissibility of such evidence under the statute, the trial court determines whether the probative value of the evidence outweighs its inflammatory or prejudicial nature. *Harris v. State*, 322 Ark. 167, 907 S.W.2d 729 (1995); *see also* Ark. Code Ann. 16-42-101(c) (Repl. 1999). The *Harris* court held that our rape-shield statute is intended to protect victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Harris, supra.* Here, Butler proffered the testimony as evidence of B.J.M.'s prior inconsistent statements to undermine her credibility. As such, the proffered testimony violated the rape-shield statute. *See, e.g., Sera*, 341 Ark. at 442, 17 S.W.3d at 78 (affirming the rape-shield-based exclusion of evidence because the testimony's purpose was to cast the victim in a bad light); *see also Hill v. State*,74 Ark. App. 28, 45, 45 S.W.3d 406, 407 (2001) (stat-

---

[2] Butler asserts that the State improperly invoked the "religious privilege" under Ark. R. Evid. 505(b) and (c), because Butler was not functioning as a minister when B.J.M. allegedly rendered her recantation regarding her stepfather, nor, Butler says, did B.J.M. have any problem with any of her communication being divulged. The State submits that Butler failed to get a ruling on the Rule 505 issue, but since Butler's proffer is inadmissible under the rape-shield statute, that preservation argument is of no import.

ing that testimony regarding victim's prior inconsistent statements
offered to rebut her credibility was inadmissible because it violated
the rape-shield statute). Thus, the trial court did not abuse its
discretion by ruling that the proffered testimony was inadmissible
in violation of the rape-shield statute.

For his final point on appeal, Butler argues that the trial court
erred in allowing the testimony of two other victims in this case.
Butler notes that after this court's remand in 1999, the rape and
first-degree violation-of-a-minor charges against him, involving
three separate victims, were severed. The rape counts that are the
subject of this appeal involved B.J.M., and the violation-of-a-
minor charges involved two other girls, A.W. and K.H. Prior to
the trial of the rape charges, Butler became aware that the State
intended to call A.W. and K.H. to testify in the rape trial. He
filed a motion in limine to exclude their testimony, but the trial
court denied the motion. At trial, both girls testified about But-
ler's sexual contact with them.

The trial court allowed this testimony under the
so-called "pedophile exception" to Ark. R. Evid. 404(b). Rule
404(b) precludes evidence of prior bad acts offered to prove the
character of a person in order to show that he acted in conformity
therewith. However, other crimes, wrongs, or acts may be admis-
sible for other purposes, such as proof of motive, opportunity,
intent, or absence of mistake, or accident. *Id.* Moreover, the
pedophile exception to 404(b) specifically permits the admission
of evidence of other sexual acts with children, when it tends to
show a proclivity toward a specific act with a person or class of
persons with whom the accused has had an intimate relationship.
*Thompson v. State,* 322 Ark. 586, 910 S.W.2d 694 (1995). The
testimony of other rape victims is relevant in a criminal trial for
the rape of an underage victim to show motive, intent, or plan.
*Id.* The rationale for recognizing the pedophile exception is that
such evidence helps to prove the depraved sexual instinct of the
accused. *Berger v. State,* 343 Ark. 413, 36 S.W.3d 286 (2001) (cit-
ing *Greenlee v. State,* 318 Ark. 191, 884 S.W.2d 947 (1994)).

Butler argues that the testimony of A.W. and K.H.
was improperly admitted for several reasons. First, he asserts that

the facts in those two cases were not sufficiently similar to those in the case against B.J.M., in that B.J.M. never lived with Butler or in the school's dorm, as A.W. and K.H. did. The pedophile exception, however, does not mandate that all of the alleged victims must have lived in the same house. *See, e.g., Berger, supra; Thompson, supra* (which made no mention of the "same household" language found in other pedophile exception cases).

▮▮▮ Next, Butler contends that the facts surrounding his acts with A.W. and K.H. were distinguishable from those involving B.J.M., in that A.W. and K.H. were several years older than B.J.M. when he engaged in sexual intercourse with them. However, the mere fact that the abuses occurred with girls of different ages and in different locations does not preclude the application of the pedophile exception. Certainly, all three girls were minors, and all three were placed under Butler's care and authority while they were attending his school. In *Berger, supra*, this court affirmed the trial court's decision to admit testimony of two other rape victims, even though those rapes had occurred in another state, and apparently some years prior to the rape at issue in the appeal. Here, A.W. and K.H. were students in Butler's school, as was B.J.M.; A.W. lived in Butler's house, and one of the rapes of B.J.M. occurred while she was staying at Butler's house for an extended period. The similarities are such that the trial court did not abuse its discretion in permitting the other victims' testimony under Rule 404(b) and the pedophile exception to that rule.

For the foregoing reasons, Butler's convictions are affirmed.

IMBER, J., not participating.