John D. MARTIN *v.* STATE of Arkansas

CR 02-1284 119 S.W.3d 504

Supreme Court of Arkansas
Opinion delivered October 2, 2003

292

*Irwin & Associates Law Firm, P.A.,* by: *Robert E. Irwin,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Valerie L. Kelly,* for appellee.

DONALD L. CORBIN, Associate Justice. Appellant John D. Martin was convicted in the Pope County Circuit Court of the offenses of rape, Class Y felony; violation of a minor in the first-degree, Class C felony; and carnal abuse in the third degree, Class D felony. He was sentenced to respective terms of imprisonment of fourteen years, three years, and one year. He raises four points for reversal, one of which challenges the trial court's ruling under the rape-shield statute, Ark. Code Ann. § 16-42-101 (Repl. 1999). Our jurisdiction is thus pursuant to section 16-42-101 and Ark. Sup. Ct. R. 1-2(a)(8). We find no error and affirm.

The record reflects that on February 21, 2001, sixteen-year-old Cassy Wright reported to her high school counselor that she had been raped and sexually abused for more than four years by Martin, her mother's live-in boyfriend. The counselor reported the crimes to the police, and Cassy was interviewed that day by an investigator from the Arkansas State Police. Following her interview, police secured a search warrant for the family's residence in London. Based on Cassy's statement and the physical evidence found in the search, Martin was charged by information with one count of rape, for acts of sexual intercourse or deviate sexual activity occurring on or about September 1, 1996, and April 5, 1998; one count of carnal abuse in the third degree, for acts of sexual intercourse or deviate sexual activity occurring between April 7, 1998, and April 6, 2000; and one count of violation of a minor in the first degree, for acts of sexual contact occurring between April 7, 2000, and February 21, 2001. The jury convicted Martin of all three offenses, and this appeal followed.

*I. Sufficiency of the Evidence*

Martin first argues that the trial court erred in denying his motion for a directed verdict on the charges of rape and first--degree violation of a minor. Particularly, he contends that there was insufficient evidence that any act of rape occurred on the dates charged in the information, September 1, 1996, and April 5, 1998. As for the charge of first-degree violation of a minor, Martin contends that the evidence was insufficient to show that he was this child's guardian, or a temporary caretaker, or a person in a position of trust or authority over the child. We find no merit to either argument.

 We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Mills v. State*, 351 Ark. 523, 95 S.W.3d 796 (2003); *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61, *cert. denied*, 531 U.S. 998 (2000). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Id.* With this standard in mind, we review the evidence in this case.

Cassy testified at trial that Martin began having sexual intercourse with her in the summer of 1996, when she was twelve years old and had just completed the sixth grade. On that occasion, Cassy was lying on her bed when Martin came in, pulled down her pants, and started rubbing his penis on her. She stated that she told him not to put it in, but he did it anyway. She stated further that she tried to get up, but he would not let her. The last time that Cassy and Martin had intercourse was on February 17, 2001, four days before she reported the abuse to her school counselor. On that date, she stated that she was washing dishes when Martin came up behind her and put his hands on her vagina. They then went into her bedroom, where Martin took down her pants and had sex with her for ten or fifteen minutes. She testified that Martin called that a "quickie."

Between the first and last times, Cassy stated that Martin routinely had sex with her. She explained: "At first, it was about once a week, and that went on for about a month or two, and then

it was every time my mom went to work." She then reiterated that Martin had sex with her while she was in the seventh, eighth, ninth, tenth, and eleventh grades. She stated that they had sex in her bedroom, in her mother's bedroom, in Martin's truck, and in the barn. She stated that the last time they had sex it was in her bedroom.

In addition to Cassy's testimony, the State presented evidence from Melissa Myhand, an analyst employed by the Arkansas State Crime Laboratory. Myhand stated that she had conducted DNA testing on a fitted sheet taken from Cassy's bed during the police search. Myhand stated that she found a semen stain on the sheet that had the same markers as the blood sample submitted by Martin. She stated that the probability of selecting another person at random from the general population that had the same markers was approximately 1 in 528 million in the Caucasian population. Myhand also tested semen stains from the comforter and quilt taken from Cassy's bedroom and they matched Martin's DNA. For these items, Myhand stated that the probability of selecting another person at random from the general population that had the same markers was approximately 1 in 36 million in the Caucasian population.

Martin argues that despite the foregoing testimony, the evidence was insufficient to demonstrate that any act of rape occurred on the two dates listed in the amended information. The State contends that the exact dates of the offenses are immaterial in this case, because the proof clearly shows that Martin had sexual intercourse with Cassy while she was under the age of fourteen. We agree with the State.

■■■ Generally, the time a crime is alleged to have occurred is not of critical significance, unless the date is material to the offense. *See* Ark. Code Ann. § 16-85-405(d) (1987); *Wilson v. State*, 320 Ark. 707, 898 S.W.2d 469 (1995); *Harris v. State*, 320 Ark. 677, 899 S.W.2d 459 (1995); *Fry v. State*, 309 Ark. 316, 829 S.W.2d 415 (1992). "That is particularly true with sexual crimes against children and infants." *Id.* at 317, 829 S.W.2d at 416. Any discrepancies in the evidence concerning the date of the offense are for the jury to resolve. *Wilson*, 320 Ark. 707, 898 S.W.2d 469 (citing *Yates v. State*, 301 Ark. 424, 785 S.W.2d 199 (1990)). In cases of rape, the evidence is sufficient if the victim gave a full and detailed accounting of the defendant's actions. *Id.* Moreover, where the defense is that the sexual acts never occurred and were

entirely fabricated, the lack of exact dates is not prejudicial to the defendant. *See Harris*, 320 Ark. 677, 899 S.W.2d 459; *Fry*, 309 Ark. 316, 829 S.W.2d 415.

Martin was charged with a single count of rape, for which the prosecutor alleged two approximate dates in the information. The dates were apparently derived from the victim's testimony. The first date, September 1, 1996, coincides with the victim's testimony that the first act of sexual intercourse occurred in the summer of 1996, when she was twelve years old and had just finished the sixth grade. The second date offered by the prosecution, April 5, 1998, is the last date for which the charge of statutory rape would be applicable, as the victim turned fourteen years old on April 6, 1998. In using this latter date, it appears that the prosecutor was attempting to demonstrate a range of time during which the acts of rape occurred. Again, this is consistent with the victim's testimony that for a month or two after the first time, Martin had sex with her about once a week and, thereafter, every time her mother was at work.

██ ██ Martin's defense was that he did not commit the crimes, and that the victim had fabricated the events in order to get him removed from the home. Given this defense, the exact dates of the sexual acts were immaterial to the offenses, and Martin suffered no prejudice. More importantly, the victim gave a full and detailed account of Martin's actions, and her testimony alone constitutes substantial evidence to support the rape conviction. *See Mills*, 351 Ark. 523, 95 S.W.3d 796; *Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002); *Spencer v. State*, 348 Ark. 230, 72 S.W.3d 461 (2002). Accordingly, we reject Martin's argument on this point.

Likewise, we reject Martin's argument that the evidence was insufficient to convict him of the offense of first-degree violation of a minor. He argues that the State failed to prove that he was the child's guardian or temporary caretaker, or that he occupied a position of trust or authority over the victim. The statute under which he was convicted, Ark. Code Ann. § 5-14-120 (Repl. 1997)[1], provided in part:

---

[1] This section was repealed by Act 1738 of 2001 and is now encompassed by the offense of sexual assault in the second degree, Ark. Code Ann. § 5-14-125 (Supp. 2003).

(a) A person commits the offense of violation of a minor in the first degree if he engages in sexual intercourse or deviate sexual activity with another person not his spouse who is more than thirteen (13) years of age and less than eighteen (18) years of age, and the actor is the minor's guardian, an employee in the minor's school or school district, a temporary caretaker, or a person in a position of trust or authority of the minor.

■ Contrary to Martin's argument, the evidence clearly demonstrated that he occupied a position of trust or authority over Cassy during the time that he lived with her and her mother. Several witnesses, including Martin, testified that he had repeatedly disciplined Cassy because of her poor grades at school. Moreover, Cassy testified that she had a close relationship with Martin during the years that he lived with her and her mother. She also stated that she called Martin "Daddy," and that she considered him to be her father. This evidence is sufficient to support the conclusion that Martin was either Cassy's guardian[2] or was, at least, a person in a position of trust or authority over the minor girl. We thus affirm the trial court's denial of a directed verdict.

## II. Refusal to Instruct Jury

For his second point on appeal, Martin argues that the trial court erred in denying his request to instruct the jurors not to consider the act of sexual intercourse that occurred on February 17, 2001, on the charge of statutory rape. Martin argued that the instruction was necessary, because the victim was over the age of fourteen at that time and there was no evidence that he used force on her. The trial court denied the request on the ground that the jury would be instructed as to the elements necessary to prove each of the offenses. We find no error in this ruling.

■ The State initially argues that this point is procedurally barred because Martin failed to proffer a proposed instruction to the trial court and also failed to include any proffered instruction in the record on appeal. We disagree with this argument, as we

---

[2] At the time of these offenses, the term "Guardian" was defined in Ark. Code Ann. § 5-14-101(10) (Repl. 1997) as meaning "a parent, stepparent, legal guardian, legal custodian, foster parent, or anyone who, by virtue of a living arrangement, is placed in an apparent position of power or authority over a minor." This definition is now codified at Ark. Code Ann. § 5-14-101(3) (Supp. 2003).

view Martin's request as one for an admonishment to the jury, not one for a formal jury instruction. Notwithstanding, we affirm the trial court's ruling for two reasons. In the first place, Martin has failed to present any convincing argument or citation to legal authority that would show that such an admonition was warranted. This court has made it clear that it will not consider an argument when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *See, e.g., Mills*, 351 Ark. 523, 95 S.W.3d 796; *Ward v. State*, 350 Ark. 69, 84 S.W.3d 863 (2002); *Hollis v. State*, 346 Ark. 175, 55 S.W.3d 756 (2001).

In the second place, the jury was properly instructed on the elements of the crime of rape. Specifically, the jury was instructed that the State had to prove two elements: (1) that Martin engaged in sexual intercourse or deviate sexual activity with the victim, and (2) the victim was less then fourteen years of age at the time of the alleged offense. Thus, the jury was correctly instructed that only those acts of sexual intercourse occurring before Cassy's fourteenth birthday were evidence of rape. Martin has failed to demonstrate that he was prejudiced by the trial court's refusal to admonish the jury as requested, and we will not reverse such a ruling absent a showing of prejudice. *See Hamm v. State*, 304 Ark. 214, 800 S.W.2d 711 (1990); *Burnett v. State*, 287 Ark. 158, 697 S.W.2d 95 (1985), *overruled on other grounds, Midgett v. State*, 292 Ark. 278, 729 S.W.2d 410 (1987). Accordingly, we affirm the trial court's ruling on this point.

### III. Evidence of Prior False Allegations

For his third point on appeal, Martin argues that the trial court erred in refusing to allow him to present evidence that the victim's older sister previously had made false allegations that Martin sexually abused her. Martin contended that this evidence was relevant because the victim in this case was aware of the prior allegations and their effect, namely that Martin was removed from the house. It was Martin's defense that Cassy had fabricated the charges against him so that the police would again remove him from the home, and she would then be free of Martin's strict discipline. He asserted that the evidence of her sister's allegations would establish Cassy's bias and prejudice against Martin and her knowledge, preparation, and motive for lying about him.

Initially, during a preliminary hearing, the trial court indicated some hesitancy to allow the evidence. After hearing further argument, however, the court ruled that Martin could present the evidence at trial, provided that he could lay a foundation connecting the prior allegations to the current charges against him. Later, during Cassy's cross-examination at trial, the court again indicated that it would allow the evidence only if defense counsel could lay a proper foundation. No further attempt to admit the evidence was made by Martin until after he had rested his case. At that point, Martin's counsel made a proffer of evidence about the prior allegations. Counsel stated that he would call Cassy for the purpose of establishing knowledge that she had of her sister's false allegations. Counsel also proffered a portion of Cassy's statement to police concerning that knowledge. Additionally, counsel stated that he intended to call Cassy's sister, Melissa Wright, to establish that Melissa had in fact lied about Martin, that Cassy knew about the lie, and that Melissa withdrew those charges after she delivered a child by another father.

The prosecutor objected to the evidence on the ground that Martin had failed to lay a proper foundation showing how the evidence was relevant to the charges that Cassy made. The trial court agreed that the evidence was not relevant and denied its admission. Martin now argues that the trial court's ruling is erroneous. He does not, however, make any convincing argument or cite to even one piece of legal authority to support his contention. As stated in the previous point, this failure alone is sufficient to affirm the trial court's ruling. *See Mills*, 351 Ark. 523, 95 S.W.3d 796; *Ward*, 350 Ark. 69, 84 S.W.3d 863; *Hollis*, 346 Ark. 175, 55 S.W.3d 756. Notwithstanding, we affirm because Martin has not shown that the trial court abused it discretion in refusing to allow the evidence.

 The decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse a trial court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002); *Thomas v. State*, 349 Ark. 447, 79 S.W.3d 347 (2002). Moreover, we will not reverse absent a showing of prejudice. *Id.* Similarly, a trial court's ruling on relevancy is entitled to great weight and will not be reversed absent an abuse of discretion. *Clem v. State*, 351 Ark. 112, 90 S.W.3d 428 (2002). Relevant evidence is that having any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id.* (citing Ark. R. Evid. 401).

We agree with the State that the trial court did not manifestly abuse its discretion in ruling that the proffered evidence was not relevant to the charges against Martin. As the State points out, the issues to be determined for each of the three offenses that Martin was charged with was whether Martin had sexual intercourse with Cassy and how old she was at the time of the offenses. The State relies on this court's holding in *Free v. State*, 293 Ark. 65, 732 S.W.2d 452 (1987), to support its contention that the evidence proffered by Martin had no bearing on those issues.

In *Free*, the appellant was convicted of rape. On appeal, he argued that the trial court had erred in unduly restricting his examination of a witness and of the child victim concerning prior statements made by the victim to the witness. According to the appellant, the witness would have testified that he and the victim had had a disagreement during which the victim threatened to tell the police that the witness was going to rape him. This court upheld the trial court's ruling, holding, in part, that the evidence was not relevant to whether the appellant had raped the victim.

Here the proffered testimony showed nothing more than the fact that Cassy's sister had lied about Martin in the past. It was not probative of the issue of Cassy's veracity or her bias or prejudice against Martin. Martin simply failed to connect the dots between the proffered evidence and the charges against him. Without more of a foundation, Martin's theory on this point is speculative, at best. Furthermore, Martin has failed to show that he was prejudiced by the trial court's ruling, as he was allowed to vigorously pursue his theory that Cassy had fabricated the allegations against him to get him out of the house, because he was a strict disciplinarian. The record demonstrates that Martin cross-examined Cassy extensively about the facts that she had poor grades in school, that she had been grounded by Martin until she had a "C" average or higher for two straight semesters, that she had repeatedly disobeyed her mother and Martin about school activities, and that she thought that Martin was too strict. We thus affirm the trial court's ruling on this point.

## IV. Rape-Shield Evidence

For his final point on appeal, Martin argues that the trial court erred in refusing to allow him to present evidence about Cassy's sexual conduct with two boys occurring after Martin was arrested, but prior to trial. The record reflects that during the pretrial *in camera* hearing, Martin proffered evidence showing that after Cassy made the allegations against him, she had been having sexual relations with two boys, both of whom Martin claims that he had been attempting to keep her away from. He also proffered evidence that Cassy had admitted to the prosecutor that she had become pregnant by one of the boys and later delivered a child out of wedlock. Martin argued that the evidence was relevant to support his theory that Cassy had fabricated the charges against him in order to get him removed from the house, so that she could date the boys that Martin had prohibited her from seeing.

In response, the prosecutor argued that the evidence of Cassy's prior sexual conduct was not essential to the defense's theory. He contended that Martin could fully pursue his defense without referring to her prior sexual conduct. The prosecutor even averred that Martin could ask Cassy whether Martin had disciplined her because he *believed* that she was having sexual intercourse with a boy. He asserted, however, that whether Martin's belief was true was irrelevant to his defense. Finally, the prosecutor argued that the proffered evidence was inappropriate character evidence that would be unfairly prejudicial to the State's case.

The trial court ruled that the evidence was not totally irrelevant to Martin's defense, but that any probative value of the evidence was outweighed by the prejudicial effect on the victim and the State's case. We find no error with this ruling.

The rape-shield statute, section 16-42-101, provides that evidence of a victim's prior sexual conduct is inadmissible at trial except where the court, at an *in camera* hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. *Graydon v. State*, 329 Ark. 596, 953 S.W.2d 45 (1997). This court has interpreted the phrase "prior sexual conduct" broadly, such that it encompasses sexual conduct that occurs prior to trial, not just conduct occurring prior to the time of the alleged rape. *Short v. State*, 349 Ark. 492, 79 S.W.3d 313 (2002);

*Laughlin v. State*, 316 Ark. 489, 872 S.W.2d 848 (1994). The purpose of the statute is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *State v. Babbs*, 334 Ark. 105, 971 S.W.2d 774 (1998); *Graydon*, 329 Ark. 596, 953 S.W.2d 45. Accordingly, the trial court is vested with a great deal of discretion in determining whether the evidence is relevant, and we will not overturn the trial court's decision unless it constituted clear error or a manifest abuse of discretion. *Id.*

■ The evidence sought to be admitted by Martin is just the sort of evidence that the rape-shield statute prohibits. It was improper character evidence offered to show that the victim was an immoral person. This fact is evidenced by Martin's brief on appeal, in which he states that the jury should have been informed that the victim "was capable of other immorality" and was not "an innocent little child wronged by the Defendant." Given the obvious potential that this evidence could be used to inflame the jury, the trial court conducted the appropriate balancing test set out in section 16-42-101(c) and concluded that the probative value of the evidence outweighed its prejudicial nature. *See Butler*, 349 Ark. 252, 82 S.W.3d 152 (citing *Harris v. State*, 322 Ark. 167, 907 S.W.2d 729 (1995); Ark. Code Ann. § 16-42-101(c) (Repl. 1999)). We cannot say that the trial court's ruling was clearly erroneous or a manifest abuse of discretion.

Affirmed.

THORNTON, J., not participating.