James HATHCOCK *v.* STATE of Arkansas

CR 03-1089 182 S.W.3d 152

Supreme Court of Arkansas
Opinion delivered May 27, 2004

[Rehearing denied July 1, 2004.]

*Jeff Rosenzweig*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

J IM HANNAH, Justice. Appellant James Hathcock appeals the judgment of the Pulaski County Circuit Court, Fifth Division, convicting him of incest and sentencing him to a term of six years' imprisonment in the Arkansas Department of Correction. For reversal, Hathcock argues that: (1) the trial court erred in denying his motion to present evidence of the victim's prior sexual conduct; (2) the trial court abused its discretion in "refusing to fully exclude evidence or grant a continuance when the State announced its intention, immediately before retrial, to introduce previously undisclosed evidence;" (3) the trial court erred in refusing to permit testimony concerning the erasure of witness interview tapes; and (4) the trial court erred in permitting the State to introduce evidence under Rule 404(b) of the Arkansas Rules of Evidence. Because this appeal involves a challenge under the rape-shield statute, our jurisdiction is pursuant to Ark. Code Ann. § 16-42-101 (Repl. 1999) and Ark. Sup. Ct. R. 1-2(a)(8).

## Evidence of Prior Sexual Conduct

Prior to trial, Hathcock filed a Motion to Admit Evidence of Prior Sexual Conduct and to Hold Ark. Code Ann. § 16-42-101, the rape-shield statute, unconstitutional. In his motion, Hathcock contended that evidence of the prior sexual conduct of his daughter S.H. was essential to the presentation of his defense to her accusation because part of his defense was that S.H. had "falsely accused him out of resentment for reasons including his restrictions on her social life because of her sexual activity." He also contended that S.H. had admitted misrepresenting her sexual activity in the course of discussing the allegations with the police. Hathcock claims that "this denial and recantation went to [S.H.'s] credibility."

At the rape-shield hearing, Hathcock proffered S.H.'s testimony on the issue of prior sexual conduct. Following are the relevant portions of the colloquy between defense counsel and S.H.:

Q: [S.H.], do you recall testifying back a number of months ago here in a hearing, is that correct?

A: Yes.

Q: And if I recall correctly, when you came down to the Little Rock Police Department, they originally asked you if had had sex with anyone; is that right?

A: Yes.

Q: And you told them no; is that correct?

A: Yes. . . .

Q: And a medical examination was set up; is that correct?

A: Yes.

Q: And at some point before the examination was conducted, you admitted that you, in fact, had had sex?

A: In that same day that she asked me, I said no, but I told her that I wanted to tell my mom that I did before I told them.

Q: Okay. You told Ms. Elmore that you did or you did not?

A: I told her that I didn't, but I wanted to tell her, but then I — . . . I said no to her at first. And then I said yes, I did, but I wanted to tell my mom before they did. I wanted to tell her myself.

Q: You originally said no to Ms. Elmore?

A: Yes, I originally said no.

Q: And then you said yes to Ms. Elmore?

A: Yes.

Q: Okay. How long between the time you said no and the time you said yes?

A: Seconds.

* * *

The trial court found:

. . . First of all, the Court is going to find that the testimony would involve sexual conduct as defined by 16-42-101 and that the testimony would be used for the purposes to attack the credibility of the victim and that the testimony would be relevant to an issue. But the problem we have is that I don't know that the Court will find that its probative value, though, doesn't outweigh its inflammatory or prejudicial nature. And although relevant in that it may tend to prove that the victim is lying or shed some light on whether or not this incident occurred, I think under the statute it's excluded in that I think in this case it's inflammatory and prejudicial.

Especially—and I make this finding especially in light of the fact that it appears there is an inconsistency. And there is an initial inconsistency about whether or not she had told the police officer that she had had prior sexual conduct or engaged in prior sexual conduct, but the inconsistency revolved around the statements that she gave in testimony, not whether or not she had, in fact, engaged in conduct. And I think she has come forth and said that she has engaged in prior sexual conduct and; it's pretty consistent.

So anything we get into in that area I think would violate the rape shield statute, and I want to stay away from that. So I will deny that part, but I think you have made a record on that.

In addition, the trial court denied Hathcock's motion to declare § 16-42-101 unconstitutional.[1]

\* \* \*

At trial, Hathcock proffered the following testimony through counsel:

. . . If permitted to testify on this point, Mr. Hathcock would testify that as part of what he perceived to be the antagonism . . . felt toward him, . . . he had a [sic] argument, confrontation, meeting —whatever you may want to call it—with this witness here and told her in a very stern tone that if he caught her having sex, that he would . . . have the Children's Hospital examine her and that she had a negative reaction toward this . . . . And we would submit this would go to his, go to bias, any bias she may have, and we would submit that the probative value outweighs any prejudicial nature, if any. . . .

The trial court held:

Here is what the Court's ruling is going to be. I'm going to deny the use of it, but it's for another reason. In addition to the fact that I, I do think that as far as it being more probative than prejudicial and weighing it, I would find that the probative value is probably outweighed by the danger of undue prejudice. But I think it's also kind of already been hinted at already when the argument was made that the defendant was very strict and was very concerned about the, his daughters becoming pregnant and that was part of the reason why, you know, that no boys, no phone calls. And so that to me is another way of saying this.

So I don't think that it's necessary to get into this particular thing. because I think that it doesn't foreclose the defendant from making

---

[1] We note that Hathcock contends on appeal that the rape-shield statute was unconstitutional as applied in this case. Hathcock's constitutional argument is as follows:

Moreover, the exclusion violated federal and state constitutional rights to present a defense. *Chambers, Washington, Davis, Rock, Crane, supra.*

Hathcock fails to develop his argument concerning the constitutionality of the rape-shield statute. We have made it exceedingly clear that we will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Wooten v. State*, 351 Ark. 241, 91 S.W.3d 63 (2002).

the argument that he was concerned about them becoming pregnant and that's why he was very hard on them. . . .

\* \* \*

On appeal, Hathcock argues that the trial court erroneously applied the provisions of Ark. Code Ann. § 16-42-101(b) (Repl. 1999), the Arkansas rape-shield statute. The rape-shield statute provides, in pertinent part:

> (b) In any criminal prosecution under § 5-14-101 et seq. or § 5-26-202, . . . opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.

Ark. Code Ann. § 16-42-101(b) (Repl. 1999).

The rape-shield statute provides that evidence of a victim's prior sexual conduct is inadmissible at trial except where the court, at an *in camera* hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. *Martin v. State*, 354 Ark. 289, 119 S.W.3d 504 (2003). The purpose of the statute is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Id.* Accordingly, the trial court is vested with a great deal of discretion in determining whether the evidence is relevant, and we will not overturn the trial court's decision unless it constituted clear error or a manifest abuse of discretion. *Id.* In evaluating the admissibility of such evidence under the statute, the trial court determines whether the probative value of the evidence outweighs its inflammatory or prejudicial nature. *Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002).

The State contends that the trial court's ruling did not impede the appellant's defense; it merely prevented questioning the victim with regard to her admission that she had sex with another person subsequent to the crime by her father. The State contends that it was not necessary for Hathcock to expose S.H.'s subsequent sexual history in order to demonstrate her lack of credibility with regard to the claims she had made against her father. In this case, the trial court excluded evidence of S.H.'s prior sexual conduct, but it allowed Hathcock to argue that S.H. was fabricating the allegations because she thought her father was too strict with her.

 Hathcock maintains that the trial court erred in excluding the testimony because S.H.'s "falsehood to the police was essential to a demonstration of her lack of credibility, that the prejudice to the State was nonexistent and that the probative value outweighed any prejudice that might be found to exist." We rejected an argument similar to Hathcock's in *Turner v. State*, 355 Ark. 541, 141 S.W.3d 352 (2004). In that case, the appellant argued that the trial court erred in refusing to allow him to impeach the victim with her inconsistent statements to police about her virginity. The appellant contended that the evidence was crucial to attack the victim's credibility, and that his purpose for introducing the evidence was not to expose the victim's past sexual conduct, but to prove that she lied to police. In *Turner*, the trial court found that the inconsistent statements had little probative value, and that the prejudicial effect of the evidence clearly outweighed any probative value. We agreed and stated that "the probative value of the inconsistent statements do not outweigh the obvious prejudicial or inflammatory effect of the evidence, which would have been to cast the young girl in a bad light." *Turner, supra*. Here, given the obvious potential that this evidence could be used to inflame the jury, the trial court conducted the appropriate balancing test set out in section 16-42-101(c) (Repl. 1999) and concluded that the prejudicial nature of the evidence outweighed its probative value. *See Martin, supra*. We hold that the trial court did not abuse its discretion in excluding evidence of S.H.'s prior sexual conduct.

### Denial of Continuance

Prior to trial, Hathcock filed a Motion to Exclude New "Evidence" or For Continuance if Not Excluded. In his motion,

Hathcock stated that the prosecuting attorney called defense counsel a few days prior to trial and informed defense counsel that she was going to elicit new testimony from S.H. to the effect that her father had "conducted voyeuristic activity" while she was in the bathroom. Hathcock further stated that the prosecuting attorney sent defense counsel a fax, in which she alleged that, on occasion, Hathcock became intoxicated and "slow danced" with S.H. and his other daughter J.H., and that both daughters stated that Hathcock "put his hands on their buttocks while dancing. . . ." The prosecuting attorney also disclosed that the alleged incidents had taken place in the presence of others.

Hathcock argued that the evidence should be excluded because it is perjurious and because it violates federal and state guarantees of due process and fair trial. He also argued that even if the evidence were not excluded on constitutional grounds, the evidence should be excluded because it was provided too late for the defense to prepare to defend against it. Hathcock contended that in the event the evidence was not excluded, he should be granted a continuance to give defense counsel sufficient time to interview additional witnesses. The trial court excluded the evidence concerning the alleged voyeurism, and it allowed testimony concerning the "slow dancing" incidents only from members of Hathcock's immediate family. The trial court stated that "if any other person other than one of the five Hathcocks is present during any of the instances, it is not allowed." At trial, over Hathcock's objections, the State was allowed to present testimony from S.H. and J.H. that Hathcock had become intoxicated and fondled their buttocks.

On appeal, Hathcock argues that while the trial court thought it was preventing damage by limiting testimony to things that happened within the family group, the decision to let that evidence in had the effect of depriving Hathcock of the right to seek important rebuttal evidence, thereby prejudicing him. Hathcock states:

> If a witness says that X and Y occurred, and it possible that Y may be disproved by other testimony whereas . . . there is no evidence available to disprove X, the limitation of the evidence to X deprives the defendant of his right to defend. If the defendant can prove that Y is false, that will also affect the credibility of X—as well as other statements.

\* \* \*

The law is well established that the granting or denial of a motion for continuance is within the sound discretion of the trial court, and that court's decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Green v. State*, 354 Ark. 210, 118 S.W.3d 563 (2003); *Anthony v. State*, 339 Ark. 20, 2 S.W.3d 780 (1999). When deciding whether a continuance should be granted, the following factors are to be considered by the trial court: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit stating not only what facts the witness would prove, but also that the appellant believes them to be true. *Green, supra; Anthony, supra.* Additionally, the appellant must show prejudice from the denial of the continuance, and when a motion for continuance is based on a lack of time to prepare, we will consider the totality of the circumstances; the burden of showing prejudice is on the appellant. *Green, supra; Anthony, supra.*

In this case, Hathcock claims that there were only two appropriate resolutions to the issue: exclude the evidence completely or grant a continuance to allow time for the defense to reinterview witnesses to develop full rebuttal to the allegations. He claims that the limitation placed on testimony, *i.e.*, allowing testimony only regarding incidents where members of the Hathcock family alone were present, caused him to be essentially ambushed with surprise allegations while depriving him of the ability to obtain evidence bearing on the credibility of the allegations.

The State contends that Hathcock's argument must fail because after having provided the various reports and interviews of his daughters to defense counsel through its open-file policy, the State was not obligated to outline the exact course of potential testimony of its witnesses. Rule 17.1(a)(i) of the Arkansas Rules of Criminal Procedure provides that the prosecuting attorney, upon timely request, shall disclose to defense counsel the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at any hearing or at trial. Ark. R. Crim. P. 17.1(a)(i) (2003). We have held that Ark. R. Crim. P. 17.1(a)(i) does not require the State to disclose the substance of the testimony of the witnesses it intends to call. *Travis v. State*, 328 Ark. 442, 944 S.W.2d 96 (1997); *Donihoo v. State*, 325 Ark. 483, 931 S.W.2d 69 (1996); *Holloway v. State*, 310 Ark. 473, 837 S.W.2d 464 (1992).

The trial court concluded that, with respect to the allegations of "slow dancing" and fondling of his daughters's buttocks, Hathcock had enough time to prepare. The trial court explained:

> If it was birthday parties and other witnesses are involved, I would not allow it because then there would be the right, I think, of the defendant to probably bring some other people in to testify that it didn't happen. But if this is an incident that only, only person that—the only people that would have been there would have been Ms. Hathcock, Mr. Hathcock, [J.H.] and [S.H], then we are, again, three or four days before trial, and I think there is enough time to prepare.

\* \* \*

 Hathcock does not contend that he did not know that members of the Hathcock family would testify at trial. The State was under no obligation to disclose the substance of the testimony of the witnesses it intended to call. We cannot say that the trial court abused its discretion in denying Hathcock's motion for continuance and excluding testimony concerning the "slow dancing" incidents which occurred outside the family group.

### Erasure of Original Witness Interview Tapes

During pretrial proceedings, Hathcock discovered that the original tapes of some of the witness statements had been erased at the Little Rock Police Department. In a collateral proceeding, Hathcock sought further information and, on behalf of the Little Rock Police Department, the Little Rock City Attorney successfully argued that the records concerning the erased tapes were privileged as part of an internal investigation. The trial court examined the records *in camera* and allowed the defense access to evidence that consisted of internal affairs findings that Sergeant Vicki Williams and Detective Jennifer Elmore Hurd had failed to comply with departmental procedures concerning storage of evidence and that Williams had failed to complete an incident report within the prescribed period. The trial court did not, however, permit testimony concerning this evidence. Hathcock made a proffer of the internal affairs documents, as well as the testimony of Williams. Williams testified that even though some of the original tapes were blank or partially blank, the material on the tapes was not lost because Williams made copies of the tapes prior to storing them.

On appeal, Hathcock argues that the trial court erred in refusing to permit testimony concerning the erasure of some of the original tapes of witness interviews by someone at the Little Rock Police Department. Hathcock does not dispute that the tape cassettes used to record interviews of three witnesses were duplicated and transcribed. Rather, Hathcock contends that the evidence was relevant because it "went to the credibility of Sergeant Williams," who testified at trial. However, Hathcock does not explain how this evidence "went to the credibility" of Sergeant Williams. He also states that he "argued from the beginning that this evidence was *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), type impeachment or exculpatory material."

Again, Hathcock fails to develop his argument. "In effect the court is asked to research the law and to hold in favor of the appellant if the result of our labor so demands. We must decline that invitation." *Dixon v. State*, 260 Ark. 857, 862, 545 S.W.2d 606, 609 (1977). We do not address arguments that are not supported by authority or convincing argument. *Hicks v. State*, 327 Ark. 652, 941 S.W.2d 387 (1997).

### Rule 404(b)

Prior to trial, the State *nol prossed* two counts of sexual abuse. The allegations that formed the basis of these two counts were that Hathcock participated in a game his family referred to as the "Texas Titty Twister." Though the counts were *nol prossed*, the trial court allowed the State, over the objections of the defense, to introduce evidence of Hathcock's participation in the game. Hathcock argued that evidence of uncharged alleged misconduct violates his constitutional right to a fair trial. The trial court allowed the evidence, and it provided a limiting instruction to the jury.

Hathcock conceded at trial that under this court's interpretation of Rule 404(b) of the Arkansas Rules of Evidence, the evidence was admissible. However, he argues that this evidence of uncharged alleged misconduct violates his right to a fair trial under the Fourteenth Amendment of the United States Constitution and article 2, section 8, of the Arkansas Constitution. He contends that "[t]he admission of evidence of alleged misconduct, for which the State does not even wish to pursue a criminal charge, is indeed the type of thing which the due process clauses of the Fourteenth Amendment and Art. 2, § 8 are supposed to protect."

Rule 404(b) of the Arkansas Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

When the charge concerns the sexual abuse of a child, evidence of other crimes, wrongs, or acts, such as sexual abuse of that child or other children, is admissible to show motive, intent, or plan pursuant to Ark. R. Evid. 404(b). *Munson v. State*, 331 Ark. 41, 959 S.W.2d 391 (1998); *Douthitt v. State*, 326 Ark. 794, 935 S.W.2d 241 (1996). This exception to Rule 404(b) is known as the "pedophile exception," which provides:

> When the alleged crime is child abuse or incest, we have approved allowing evidence of similar acts with the same or other children in the same household when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship.

*Parish v. State*, 357 Ark. 260, 163 S.W.3d 843 (2004); *Taylor v. State*, 334 Ark. 339, 974 S.W.2d 454 (1998). The admission or rejection of evidence is left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Munson, supra.*

Hathcock contends that the "*carte blanche* given for any allegation made by the alleged victim against the defendant, in the name of showing the 'depraved sexual instinct' of the accused, flies in the face of due process." In this case, the State was not given *carte blanche* to present evidence of any allegation made by the alleged victim against the defendant. Rather, in this case, the State presented evidence of the "game" Hathcock played with his family, in which he twisted the nipples of members of his family. In addition, S.H. testified that she suffered an injury as a result of the "game" and sought medical treatment because she "had knots in my breast from the twisting of the breast." This testimony was consistent with S.H.'s and J.H.'s testimony that their father inappropriately touched them. We find no abuse of discretion in allowing this evidence at trial.

It appears that Hathcock also argues that the State cannot introduce the underlying facts of *uncharged* offenses as evidence under Rule 404(b); however, he offers no support for

this argument. This court has held that it will not consider an argument that presents no citation to authority or convincing argument. *Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002).

Finally, Hathcock asserts that his due process rights under the Fourteenth Amendment of the United States Constitution and article 2, section 8, of the Arkansas Constitution were violated. Hathcock does not explain how the admission of the "Texas Titty Twister" incidents violates his rights of due process. This court does not develop arguments for appellants.

Affirmed.