375 Ark. 483

**Billy Joe KELLEY, Jr., Appellant,**

**v.**

**STATE of Arkansas, Appellee.**

**No. CR 08–926.**

Supreme Court of Arkansas.

Feb. 5, 2009.

Bill Luppen, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by Brad Newman, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice.

A Pulaski County jury convicted appellant Billy Joe Kelley, Jr., of the rape of nine-year-old M.W., and he was sentenced as a habitual offender to a term of life imprisonment. On appeal, he contends that the circuit court erred (1) in denying his motion for directed verdict; (2) in allowing the State to introduce into evidence that the victim testified positive for chlamydia, without the testimony of the technician who performed the test; and (3) in refusing to allow him to ask the victim's mother if she had chlamydia. Because this is a criminal appeal in which a sentence of life imprisonment has been im-

posed, this court has jurisdiction pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2008). We affirm the circuit court.

■ Kelley first contends that the circuit court erred in denying his motion for directed verdict on the charge of rape. Specifically, he contends that there was no evidence that penetration occurred, and he asserts that the State provided no evidence that identified him as the person who raped M.W.

■ In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, considering only the evidence supporting the verdict, to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Woolbright v. State,* 357 Ark. 63, 160 S.W.3d 315 (2004). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* The statute under which Kelley was convicted is Arkansas Code Annotated section 5–14–103(a)(3)(A) (Supp.2007), which provides that a person commits rape "if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen (14) years of age."

M.W. testified at trial that Kelley engaged in sexual contact with her in November and December 2006, while he was living in a house with her, her mother, and three brothers. M.W. testified that, during that time, Kelley touched her vagina with his penis. M.W. stated that when Kelley touched her vagina with his penis, it was on "the inside." M.W. related that some of the incidents occurred in the morning and others occurred during the evening while her mother was at work and her brothers were not home. M.W. stated that it "hurted" when Kelley did this to her, and that she eventually told her neighbor, Phyllis Gordon, about what had been happening because she was "tired of it" and wanted it to stop. M.W. also testified that after the incidents occurred, she noticed a burning sensation when she went to the bathroom. M.W. stated that sometimes her stomach hurt "after he did it."

Dr. Maria Esquivel examined M.W. at Arkansas Children's Hospital on January 22, 2007. Dr. Esquivel testified that M.W., who was born on August 10, 1997, was about nine years old at the time of the examination. She stated that M.W. had a very thin hymen, and that based on this finding, she suspected that there may have been penetration into the vagina. Dr. Esquivel stated that she did not find any acute, or fresh, injuries, but she explained that any injuries inflicted in November and December would have had time to heal. She also tested M.W. for sexually transmitted diseases and learned that a swab from M.W.'s rectum tested positive for chlamydia. Dr. Esquivel testified that chlamydia is spread either "by active intercourse or by very close genital to genital contact." She stated that many women who have chlamydia may be asymptomatic but that some women experience burning upon urination.

■ Kelley contends that there is insufficient evidence to sustain a conviction for rape because M.W. provided contradictory testimony, with respect to when the incidents occurred and where in the house the incidents occurred. He states that the testimony of M.W.'s mother and brothers contradicted M.W.'s testimony as to when and where the incidents occurred. Generally, the time a crime is alleged to have occurred is not of critical significance unless the date is material to the offense. *Martin v. State,* 354 Ark. 289, 119 S.W.3d 504 (2003). This is particularly true with sexual crimes against children. *See id.* Any discrepancies in the evidence concern-

ing the date of the offense are for the jury to resolve. *Id.* Moreover, the duty of resolving conflicting testimony and determining the credibility of witnesses is left to the discretion of the jury. *Hayes v. State,* 374 Ark. 384, 288 S.W.3d 204 (2008). Here, it was for the jury to resolve any inconsistencies in testimony with respect to when and where the incidents occurred.

Kelley also contends that the State's medical evidence contradicts M.W.'s testimony that he put his penis inside her vagina. He states that the only physical evidence that M.W. had sexual contact with another person was that a swab from her rectum tested positive for chlamydia.

■ A rape victim's testimony may constitute substantial evidence to sustain a conviction for rape, even when the victim is a child. *Brown v. State,* 374 Ark. 341, 288 S.W.3d 226 (2008). The rape victim's testimony need not be corroborated, nor is scientific evidence required. *Id.* More particularly, this court has stated that the testimony of the victim which shows penetration is enough for conviction. *Gatlin v. State,* 320 Ark. 120, 895 S.W.2d 526 (1995). Under the facts of this case, M.W.'s testimony constitutes substantial evidence that Kelley penetrated M.W.'s vagina with his penis. Moreover, Dr. Esquivel's testimony established that M.W. was nine years old at the time the incidents occurred, and her testimony regarding the appearance of M.W.'s hymen was suggestive of a sexual assault. Finally, any inconsistencies in the testimony of witnesses is a matter for the jury to resolve. We hold that the circuit court did not err in denying Kelley's motion for directed verdict as there was sufficient evidence to sustain a conviction for rape.

■ Prior to trial, Kelley stated that he would object to evidence that M.W. tested positive for chlamydia unless the laboratory technician who performed the test testified at trial. Kelley's objection was based upon "rules of evidence," chain-of-custody grounds, and the confrontation clause. The State indicated it would introduce the evidence through the testimony of Dr. Esquivel, who examined M.W., but did not perform the lab work for the chlamydia test. Prior to trial, the circuit court ruled that, while the lab report showing M.W.'s positive test for chlamydia was hearsay, Dr. Esquivel reasonably relied upon it in forming her opinion that M.W. had chlamydia. Accordingly, pursuant to Arkansas Rule of Evidence 703, the circuit court denied Kelley's motion to exclude evidence about the disease. The record reflects that the circuit court did not address Kelley's confrontation-clause or chain-of-custody claims.

■ The circuit court has wide discretion in making evidentiary rulings, and we will not reverse its ruling on the admissibility of evidence absent an abuse of discretion. *Jackson v. State,* 375 Ark. 321, 290 S.W.3d 574 (2009). The failure to obtain a ruling on an issue at the trial court level, including a constitutional one, precludes review on appeal. *Jackson v. State,* 334 Ark. 406, 976 S.W.2d 370 (1998). Because Kelley failed to obtain rulings on his confrontation-clause and chain-of-custody arguments, we will not consider those arguments on appeal.

We now turn to Kelley's arguments that are preserved for appeal. At trial, Dr. Esquivel testified that cultures were taken from M.W. and sent to the lab. She testified that the lab later notified her clinic that M.W.'s rectal culture had tested positive for chlamydia. Dr. Esquivel stated that she treated M.W. for chlamydia with an antibiotic.

Kelley claims that the circuit court erred when it allowed Dr. Esquivel to testify that M.W. tested positive for chlamydia be-

cause her testimony was hearsay. In support of his argument, Kelley cites *Llewellyn v. State,* 4 Ark.App. 326, 630 S.W.2d 555 (1982), where the court of appeals held that, pursuant to Arkansas Rule of Evidence 803(8), a drug-laboratory supervisor's testimony was inadmissible hearsay because he was not present when the substance was delivered to the lab, and he had no personal knowledge of the receipt or testing of the substance. The court of appeals reversed and remanded in *Llewellyn,* and Kelley asserts that, based upon that holding, the instant case should be reversed. We disagree.

In *Goff v. State,* 329 Ark. 513, 953 S.W.2d 38 (1997), the State called a doctor to testify about, and give an opinion regarding, DNA testing performed by another doctor. Goff relied on *Llewellyn* and contended that the DNA testimony at his trial was inadmissible under Rule 803(8) because it was not from the doctor who performed the test. This court noted factual distinctions between the two cases and went on to add that *Llewellyn* did not address Arkansas Rule of Evidence 703. With respect to Rule 703, we stated:

> [A]n expert can render an opinion based on facts and data otherwise inadmissible, including hearsay, as long as they are of a type reasonably relied upon by experts in the field. Eisenberg was qualified without objection as an expert in the field of DNA testing, and she testified that it was "quite common" for DNA experts to examine case files and protocols and decide whether the DNA testing in a particular case is accurate. She said that she did so in this case. *Ferrell v. State,* 325 Ark. 455, 929 S.W.2d 697 (1996). In addition, when an expert's testimony is based on hearsay, this court has held that the lack of personal knowledge on the part of the expert does not mandate the exclusion of the testimony, but instead it presents a jury question

as to the weight of the testimony. *See id.; Scott v. State,* 318 Ark. 747, 888 S.W.2d 628 (1994).

*Goff,* 329 Ark. at 521, 953 S.W.2d at 42–43.

■■■ The State contends that, in this case, even though Dr. Esquivel did not testify that she normally relies on tests performed by the laboratory, it is axiomatic that physicians routinely rely on the results of tests and others to diagnose and treat many injuries. We agree. Dr. Esquivel's testimony regarding M.W.'s chlamydia diagnosis was based upon a lab report containing data reasonably relied upon by physicians when diagnosing and treating patients. This court does not reverse the circuit court's ruling on a hearsay question absent an abuse of discretion. *Goff, supra.* We find no abuse of discretion.

Before leaving this point, we note that Kelley also asserts that he was denied his right to confront the witness who performed the test in violation of Arkansas Code Annotated section 12–12–313(b) (Repl.2003). Although Kelley provided notice to the State that he intended to preserve all rights under Arkansas Code Annotated section 12–12–313(b), he did not make this argument to the circuit court and, consequently, he received no ruling on the issue. Accordingly, we will not consider this argument on appeal.

■■■■ For his final point on appeal, Kelley contends that the circuit court abused its discretion when it refused to allow Kelley to ask M.W.'s mother, Kimberly Britt, if she had tested positive for chlamydia. A trial court's ruling on relevancy is entitled to great weight and will not be reversed absent an abuse of discretion. *Martin, supra.* Britt testified that she and Kelley had engaged in sexual intercourse two or three times per week, without the use of condoms, around the

time the incidents with M.W. occurred, and the record reveals that Britt tested negative for chlamydia. Kelley contended below, as he does on appeal, that Britt's negative chlamydia test was relevant evidence, reasoning that if Britt did not contract chlamydia from him, M.W. likely did not contract chlamydia from him. Thus, Kelley suggests that Britt's negative test points to another perpetrator of M.W.

Kelley contends that a material issue in this case was whether M.W. contracted chlamydia from having sexual intercourse with him. He is mistaken. The issue in this case was whether Kelley had sexual intercourse with a person under fourteen years of age, or more specifically, whether Kelley penetrated the vagina of M.W. As the State points out, it is not required that the victim contract a sexually transmitted disease in order for the State to prove that rape occurred. Moreover, the jury never heard that Kelley did not have chlamydia or that he refused to be tested for it. Therefore, the question of whether Britt had a positive diagnosis for chlamydia had no relevance to any issue at trial. In addition, even assuming M.W. did contract chlamydia through sexual contact with another person, it does not foreclose a finding that she was raped by Kelley. *See, e.g., Ridling v. State*, 348 Ark. 213, 72 S.W.3d 466 (2002) (stating that evidence of sex with another man was not relevant because, unfortunately, the minor victim's having sex with one older man did not prevent her from having sex with a second older man at the same time). The circuit court disallowed evidence that was collateral to the issue of whether Kelley penetrated the vagina of M.W. We hold that the circuit court did not abuse its discretion in refusing to allow Kelley to ask M.W.'s mother, Kimberly Britt, if she had tested positive for chlamydia.

*4–3(h) Review*

The record in this case has been reviewed for reversible error pursuant to Arkansas Supreme Court Rule 4–3(h) (2008), and none has been found.

Affirmed.