Cite as 2026 Ark. App. 196

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-25-274

| | |
|---|---|
| CHARLES SLATER | **Opinion Delivered** March 18, 2026 |
| APPELLANT | APPEAL FROM THE FULTON COUNTY CIRCUIT COURT [NO. 25CR-24-27] |
| V. | |
| STATE OF ARKANSAS | HONORABLE TIM WEAVER, JUDGE |
| APPELLEE | AFFIRMED |

## WAYMOND M. BROWN, Judge

A Fulton County Circuit Court jury found appellant Charles Slater guilty of rape for which he was sentenced to a term of forty years' incarceration. On appeal, Slater argues (1) the prosecution for rape was barred by the statute of limitations; (2) the circuit court erred in denying his motion in limine to prohibit Rule 404(b) evidence; (3) the circuit court erred in excluding testimony under the Rape Shield Act; and (4) the improper admission of Rule 404(b) evidence was not harmless error. We affirm Slater's conviction for rape and the resulting sentence.

On March 28, 2024, Slater was charged by criminal information with two counts of rape. His half sister, A.P., reported that when she was ten or eleven years old, between 1999 and 2000, twenty-one-year-old Slater came into her room and digitally penetrated her vagina. She also stated that he inserted a plastic object into her vagina that same night. On a different night, Slater coerced her into touching his penis.

On April 23, Slater filed a motion and brief in support to declare the relevant statute unconstitutional as applied to him. Specifically, he contended that Arkansas Code Annotated section 5-1-109(a)(1)(D)[1], as effective when the charges were filed against him, violates the ex post facto clause because it serves to revive a previously time-barred prosecution. The circuit court denied the motion.

Prior to trial, Slater also filed a motion in limine to prohibit Rule 404(b) evidence. He sought to exclude evidence of his other bad acts, submitting that the State intended to use the information to show that he is a criminal and is likely to be guilty of the crime at issue. He argued that the bad-acts testimony of his daughters was not independently relevant because the alleged acts occurred many years after the charged crime, and the alleged acts were not similar to the crime charged. Following the proffer of witness testimony in a pretrial hearing, the circuit court found that the pedophile exception applied and denied Slater's motion.

The State moved to exclude evidence of other sexual conduct and/or sexual allegations of the victim. The circuit court granted the State's motion, ruling that the evidence was protected by the rape-shield statute.

The case proceeded to jury trial on January 30, 2025. A.P. testified that Slater, her half brother, is ten years her senior. She said that she came forward with her story when she "learned what had happened with his children[.]" A.P. testified that when she was a child, Slater visited them on holidays and other random times for a week or more. One night when she was ten or eleven, she woke up to something touching her leg. She turned her head and saw Slater kneeling at the side of

---

[1](Supp. 2023).

her bed.  A.P. testified that Slater put his hand on her leg and ran it up and down her leg, near the panty area.  He then placed his hand inside her underwear.  A.P. said that Slater inserted his finger inside her vagina and asked if she was a virgin.  She responded yes, and then he asked if it felt good and she said no.  Slater then retrieved something plastic and cold from the bathroom and inserted the object into her vagina.  He again asked if it felt good and she told him no.  A.P. testified that there was no chance that it was anyone other than Slater.  She said that Slater was a smoker and that she smelled smoke when she woke up.  A.P. stated that she also "turned and looked at him."  Slater told A.P. to keep quiet about what happened and then left the room.

A.P. testified that she did not tell her mother what Slater did to her because she did not think her mother would believe her because Slater was her first child and she loved him.  A.P. also stated that she was humiliated by what had happened and that it caused her shame when she was older.  She said that the event heavily influenced her life; she developed low self-worth and chose partners who were not good for her.  She struggled with addiction to opioids but was now five years clean and sober, completed rehabilitation, and earned her nursing license back.

On cross-examination, A.P. acknowledged that she is thirty-six years old.  She stated that she previously disclosed the rape "multiple times" in counseling.  She further acknowledged that she is a convicted felon for burglary and witness bribery.

Slater's daughter, D.S., was next to testify.  Before the start of her testimony, Slater renewed his Rule 404(b) objection.  The circuit court denied the motion.  D.S. stated that she is twenty years old, however, when she was eleven, she and Slater were home alone.  She was sitting on the couch watching TV when Slater sat beside her and asked if she had "odd dreams that included him."  He then ran his hand down her back, into her pants, beneath her underwear, and touched her butt.  She

3

felt uncomfortable and moved away from him. Later that day, Slater again reached in and touched her bare bottom while giving her a hug. D.S. testified that she pushed him away. That night, while she was sleeping, Slater entered her bedroom and crawled into bed with her. He began touching D.S.'s chest and front private area over her clothes and then began touching her under her clothes but did not penetrate her vagina. Slater left when she put up a fight; however, he returned and did "the same thing." He also forced D.S. to "touch him" over his clothes. Again, that same night, Slater stood naked at her doorway and invited her to shower with him, which she refused.

D.S. testified that a few months after the first incident, Slater approached her and said that her mother asked him to check if she was shaving. He then reached into the front side of her pants and underneath her underwear. Slater commented that she needed to begin shaving her private area. D.S. stated that it took her three years to disclose the abuse to her mother. Her mother made Slater move out of the house, but she did not report it to police.

MC, Slater's youngest daughter, was ten when she testified. She stated that when she was five years old, on more than one occasion, when she was in the bathroom changing into her night clothes after her shower, Slater picked her up, flipped her upside down onto his shoulder, rubbed her vagina, and stuck his penis in her mouth. MC was nine years old when she disclosed the abuse to her mother. Her mother kicked Slater out of the family home. MC stated that when she told her mother about the abuse, she had not heard any of D.S.'s allegations.

At the close of the State's case, Slater moved to strike the testimony of D.S. and MC on the basis of his previous Rule 404(b) objection. He argued that the testimony "is too removed from the allegations" of the current case. The court denied the motion.

4

Slater testified on his own behalf. He stated that he is ten years older than his half sister, A.P. He testified that it was "impossible" for him to have done the things A.P. alleged he did to her. Slater stated that he never spent the night in the home where A.P. lived because he did not get along with his stepdad, A.P.'s father. He also denied the allegations made by his daughter, D.S. Slater stated that his wife threw him out of the house because he was an alcoholic and she believed that he had been unfaithful. He did not learn of his daughters' sexual-assault allegations until he was arrested. Slater testified that his wife would receive a quarter of a million dollars in a divorce settlement if he was convicted. He claimed that the allegations against him were motivated by financial gain.

Slater's estranged wife, Heather Slater, testified on rebuttal. She stated that when she confronted Slater, she told him he had to move out of the family home because of MC's allegations. Heather stated that she needed to keep the children safe. She denied putting her daughters up to making the allegations for money reasons. Heather stated that after Slater left the house, A.P. reached out to her and shared what Slater had done to her when she was ten years old.

Following the jury trial, Slater was convicted of one count of rape. He was sentenced to a term of forty years' incarceration. Slater timely appealed.

On appeal, Slater first argues that his prosecution for the offense of rape was barred by the statute of limitations. When the rape against ten- or eleven-year-old A.P. was committed between 1999 and 2000, a prosecution for rape could be commenced within six years of when the victim reached the age of eighteen, so long as the violation had not been previously reported to law enforcement or the prosecutor.[2] Accordingly, Slater argues that the statute of limitations for the

---

[2]*See* Ark. Code Ann. § 5-1-109(h)(7) (Supp. 1987).

5

rape expired in 2012, when A.P. reached the age of twenty-four, yet the charges were not filed until 2024.

Slater acknowledges that, in 2013, the General Assembly lengthened the statute-of-limitations period applicable to the offense of rape. He contends, however, that the amendment was enacted after the prosecution window for the charged offense had expired. Slater asserts that applying the statute of limitations, as amended, violates the constitutional prohibition against ex post facto laws.

In a criminal prosecution, the State must prove beyond a reasonable doubt that the statute of limitations has not expired.[3] When a statute-of-limitations issue is reviewed on appeal, the appellate court views the evidence in the light most favorable to the State.[4] Our supreme court has held that no one has any vested right in a statute of limitations until the bar of the statute has become effective.[5] The General Assembly may validly enlarge the period of limitations and make the new statute, rather than the old one, apply to any cause of action that has not been barred at the time the new statute becomes effective.[6] However, the General Assembly only has the power to amend statutes of limitation affecting causes of action that are not yet barred.[7] Therefore, when the action is already

---

[3]Ark. Code Ann. § 5-1-111(a)(4) (Repl. 2013).

[4]*Dowdy v. State*, 2015 Ark. 35.

[5]*Reeves v. State*, 374 Ark. 415, 288 S.W.3d 577 (2008).

[6]*Id*.

[7]*Id*.

time-barred at the time the new statute becomes effective, the General Assembly may not revive a cause of action previously barred by the existing statute of limitations.[8]

Utilizing the above principles, we conclude that the charged offense of rape was not barred by the statute of limitations. Although the applicable statutes were amended and lengthened after the offense was committed, none of the existing statutes of limitation as applied against Slater had expired prior to these amendments, and the statute applicable when the charge was filed provided that the prosecution for rape may be commenced at any time.

Slater's argument focused on the statute of limitations as it existed when the offense was committed and the version in effect at the time the prosecution commenced, wholly ignoring the intervening amendments to the limitations period.

In 1987, the General Assembly enacted legislation providing that if the offense was committed against a minor, a prosecution for rape may be commenced within six years of when the victim reached the age of eighteen, or twenty-four years of age, as long as the violation had not been previously reported to law enforcement, or the prosecutor.[9] This was the limitations period in effect when Slater raped A.P. in 1999 or 2000. In 2011, when A.P. was twenty-two years old, and within the original limitations period, the statute was amended to permit prosecution of the rape up until the time the child victim reached the age of twenty-eight years.[10] In 2013, again before the existing statute of limitations period had expired, the statute was amended to allow the prosecution for rape

---

[8]*Id.*

[9]*See* Ark. Code Ann. § 5-1-109(h)(7) (Supp. 1987).

[10]*See* Ark. Code Ann. § 5-1-109(a)(2)(A) (Supp. 2011).

committed against a child victim to be commenced at any time.[11] This 2013 amendment, which

permitted the prosecution for rape to be commenced at any time, was in effect when the rape charge

was brought against Slater in 2024. Therefore, the rape charge against Slater was not time-barred

and there was no ex post facto violation.

Slater next argues that the circuit court erred in denying his motion in limine to prohibit Rule

404(b) evidence. He contends that the admission of witness testimony regarding allegations that he

sexually abused his daughters was not permitted and does not fall under any exception to Rule

404(b). Slater maintains that the State impermissibly used the testimony to show that he "acted in

conformity with the prior bad act in the case at bar, or that he is a bad person."

The admission or rejection of evidence under Rule 404(b) is committed to the sound

discretion of the circuit court, which this court will not disturb on appeal absent a showing of manifest

abuse.[12] Rule 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person
> in order to show that he acted in conformity therewith. It may, however, be admissible for
> other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge,
> identity, or absence of mistake or accident.[13]

Evidence offered under Rule 404(b) must be independently relevant to make the existence of any

fact of consequence more or less probable than it would be without the evidence.[14] Plainly, the prior

---

[11]*See* Ark. Code Ann. § 5-1-109(a)(1)(D) (Repl. 2013).
[12]*Eubanks v. State*, 2009 Ark. 170, 303 S.W.3d 450.

[13]Ark. R. Evid. 404(b).

[14]*Eubanks*, *supra*.

bad act must be independently relevant to the main issue, in that it tends to prove some material point rather than merely proving that the defendant is a criminal.[15]

Here, Slater makes a passing, conclusory statement that "[e]ven if the [testimonial] evidence has independent relevance, the probative value would most certainly be substantially outweighed by the unfair prejudice to [him]." Because he fails to further develop an argument concerning the independent relevance of the Rule 404(b) evidence, we decline to address it further. We do not address arguments that are not supported by authority or convincing argument.[16] This court does not develop arguments for appellants.[17]

We have long recognized a pedophile exception to Rule 404(b).[18] We have approved allowing evidence of the defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship.[19] The rationale behind this exception is that such evidence helps to prove the depraved sexual instinct of the accused.[20] Also, Rule 404(b) makes no distinction between substantiated and unsubstantiated conduct, or between charged and uncharged conduct.[21] This court

---

[15]*Id.*

[16]*Hathcock v. State*, 357 Ark. 563, 182 S.W.3d 152 (2004).

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Id.*

[21]*Holland v. State*, 2015 Ark. 341, 471 S.W.3d 179.

9

has explicitly held that our application of the pedophile exception does not require that the prior act be charged or substantiated.[22]

There are three essential restrictions on the pedophile exception.[23] First, courts require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant.[24] Physical similarities between the alleged victim and the Rule 404(b) witness such as age and gender are relevant when there is not identical conduct toward each of the accused.[25] Second, there must be an intimate relationship between the perpetrator and the victim.[26] The relationship must be one close in friendship or acquaintance, familiar, near, or confidential.[27] Third, evidence admitted pursuant to Rule 404(b) must not be too separated in time, making the evidence unduly remote.[28] A reasonableness standard is used to determine whether a crime remains relevant rather than a specific time limit.[29] On appeal, Slater does not challenge any of the restrictions on the pedophile exception—similarity of allegations, intimate relationship, or remoteness of

---

[22]*Id.*

[23]*Baumann v. State*, 2018 Ark. App. 564, 566 S.W.3d 494.

[24]*Id.*

[25]*See Stewart v. State*, 2011 Ark. App. 658, 386 S.W.3d 583.
[26]*Holland, supra.*

[27]*Eubanks, supra.*

[28]*Holland, supra.*

[29]*Id.*

allegations. Arguments made to the circuit court but not included in the arguments on appeal are considered abandoned.[30]

Furthermore, even if evidence of other child-abuse allegations meets the criteria for the pedophile exception to Rule 404(b), the evidence is still subject to exclusion under Rule 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.[31] Again, Slater makes a conclusory statement that prejudice would result from "mentioning" to the jury his other acts of sexual misconduct with young girls. He does not expound on his statement. This does not meet the requirement that appellants are to develop their arguments.

Moreover, appellants must obtain a ruling on whether Rule 404(b) evidence should have been excluded under Rule 403 to preserve the issue for appeal.[32] Here, a review of the record demonstrates that Slater failed to obtain a ruling from the circuit court as to whether the probative value of the witnesses' testimony was substantially outweighed by the danger of unfair prejudice to him.

Slater next argues that the circuit court erred in prohibiting testimony concerning the victim's prior allegations of rape and sexual assault. In exchanging witness lists, it became evident that Slater sought to question A.P. about other instances of sexual conduct. The State filed a motion to exclude the evidence of A.P.'s other sexual conduct and/or sexual allegations under the rape-shield statute. Following a pretrial hearing, the circuit court granted the State's motion to exclude. Slater argues

---

[30]*Lowery v. State*, 2021 Ark. 97, 621 S.W.3d 140.

[31]*Holland*, *supra*; Ark. R. Evid. 403.

[32]*Baumann*, s*upra*.

11

that A.P.'s previous allegedly false allegations of sexual assault were admissible in cross-examination for the purpose of attacking her credibility.

The rape-shield statute and Rule 411 govern the admissibility of evidence of other sexual conduct.[33] Under our rape-shield law, evidence of a victim's prior sexual conduct is not admissible by the defendant to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.[34] Notwithstanding the prohibition, evidence directly pertaining to the act upon which the prosecution is based or evidence of the victim's prior sexual conduct with the defendant or any other person may be admitted at the trial if the relevancy of the evidence is determined according to the provisions of the rape-shield statute.[35] The first step in the process requires that a written motion be filed by the defendant with the court at any time before the defense rests stating that the defendant has an offer of relevant evidence prohibited by subsection (b) of the rape-shield statute and the purpose for which the evidence is believed to be relevant.[36] The court then holds an in camera hearing on the motion.[37] A written record of the hearing must be made.[38] If the court determines that the offered proof is relevant to a fact in issue and that its probative value outweighs

---

[33]Ark. Code Ann. § 16-42-101 (Supp. 2023); Ark. R. Evid. 411(a).

[34]Ark. Code Ann. § 16-42-101(b); *Turner v. State*, 355 Ark. 541, 141 S.W.3d 352 (2004).
[35]Ark. Code Ann. § 16-42-101(c).

[36]*Id.* § 16-42-101(c)(1).

[37]*Id.* § 16-42-101(c)(2)(A).

[38]*Id.* § 16-42-101(c)(2)(B).

its inflammatory or prejudicial nature, the court makes a written order detailing what evidence is admissible and what testimony may be elicited based upon that evidence.[39]

In the present case, Slater failed to follow the procedure set forth in Ark. Code Ann. § 16-42-101(c) for establishing relevancy and admissibility of evidence otherwise excluded by the rape-shield statute. The record does not contain a written motion filed by Slater requesting an exception for relevant evidence, nor does it contain a written record of an in camera hearing. We have previously held that the failure to meet the requirements of § 16-42-101(c) prevents this court from reaching the issue on appeal.[40]

For his last point on appeal, Slater argues that the erroneous admission of Rule 404(b) evidence and the exclusion of relevant evidence of A.P.'s credibility were not harmless errors and contributed to the guilty verdict. He contends that, because of these evidentiary errors, he did not receive a fair trial, and his conviction must be reversed. However, as stated herein, we have not found error with the circuit court's evidentiary rulings regarding Rule 404(b) evidence or evidence excluded pursuant to rape-shield law.

Affirmed.

KLAPPENBACH, C.J., and BARRETT, J., agree.

*R.T. Starken*, for appellant.

*Tim Griffin*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.

---

[39]*Id.* § 16-42-101(c)(2)(C).

[40]*See Stewart v. State*, 2012 Ark. 349, 423 S.W.3d 69.